# THE ORIENT INSURANCE COMPANY OF HART-FORD, CONN., RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY COMPANY, APPELLANT.

(No. 1,974.)

(Submitted November 18, 1904.    Decided January 6, 1905.)

*Act of God — Pleading — Contributory Negligence—Locomotives Setting Fire—Evidence of Spark-Throwing—Corporations—Warehouse Company—Stockholders.*

Act of God—Defense—Must be Pleaded.
  1.   The act of God is a defense which must be pleaded, to be available.
Contributory Negligence—Defense—Must be Pleaded.
  2.   Contributory negligence is a defense which, in order to be relied on, must be pleaded by defendant.
Pleadings—Contributory Negligence—Complaint.
  3.   The existence of contributory negligence need not be negatived in the complaint, unless it appears from other allegations therein that the proximate cause of the injury was the act of the plaintiff.
Pleadings—Contributory Negligence—Surplusage.
  4.   An allegation in the complaint in an action against a railroad company to recover damages for the burning of property by sparks from a locomotive, that the property was destroyed by negligence of defendant, and without fault of the owners or plaintiff, denied generally in the answer, is not sufficient to raise the issue of contributory negligence of plaintiff. This allegation is surplusage and need not be proved.
Railroads—Locomotives—Sparks—Evidence.
  5.   In an action for the burning of property by sparks from a locomotive, a witness may testify how the quantity of sparks thrown by the engine at the time compared with that thrown by other engines along the road.
Corporations—Warehouses.
  6.   Under Subdivision 25 of Section 393 of the Civil Code, a corporation may be organized for the purpose of storing goods in a warehouse for shipment.
Railroads—Warehouses—Liability for Destruction—Evidence.
  7.   A railroad company is not relieved of liability for the burning of goods in a warehouse because the owners of the property were stockholders in the warehouse company—a corporation—though in its lease of the ground from the railroad company "it assumed all risk of loss to the building and contents occasioned by fire and sparks from locomotives," etc., and exclusion of evidence tending to show these matters was not error.

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

ACTION by the Orient Insurance Company of Hartford, Connecticut, against the Northern Pacific Railway Company, to recover insurance paid to owners of wool stored in a warehouse ignited by sparks from defendant's engines and burned. Judgment for plaintiff. Defendant appealed. Affirmed.

*Mr. Wm. Wallace, Jr.,* and *Mr. Chas. Donnelly,* for Appellant.

The doctrine of imputed contributory negligence has been directly applied where the relations between the parties is that of bailor and bailee; and it has been expressly held that the contributing negligence of the bailee, in reference to property entrusted to his care, will be charged to his bailor and will defeat a recovery from a third person, by whose negligence the property has been destroyed. (*Illinois Central Ry. Co.* v. *Sims,* 27 So. 527; *Welby* v. *Indianapolis & N. Ry. Co.,* 4 N. E. 410; *Texas Ry. Co.* v. *Tankersly,* 63 Tex. 57; *Luke* v. *City,* 84 Pa. St. 230.)

The mere fact that a charter had issued to a warehouse company would not make said company a *de facto* corporation, if there was no law under which the corporation might exist. "To be a corporation *de facto* it must be possible to be a corporation *de jure*." (*Everson* v. *Ellingsworth,* 67 Wis. 634; 1 Thompson on Corporations, Sec. 505; *Eaton* v. *Walker,* 1 Douglass, (Mich.) 351.) Parties carrying on business in a corporate name without being in fact a corporation either *de jure* or *de facto,* are liable as partners. (*Eaton* v. *Walker, supra;* 1 Thompson on Corporations, Sec. 506.) The provision in the lease exempting defendant from liability is valid. (*Hartford Ins. Co.* v. *Ry. Co.,* 175 U. S. 99.)

The construction, maintenance and operation of wool warehouses would not be called either a commercial or a mercantile or an industrial business, within the ordinary or legal definitions of these terms. The term "commercial," as its meaning is gathered from the numerous definitions of the term "commerce," has direct reference to traffic, intercourse or an inter-

change of commodities. It would not be applied to a business of simply furnishing depositories for the commodities so interchanged. (*Gibbon* v. *Ogden*, 1 Wheaton, 189 ; 6 Am. and Eng. Ency. of Law, 47, and cases cited; *In re New York Water Co.*, 98 Fed. 713 ; *In re Cameron, etc. Insurance Co.*, 96 Fed. 757.)

*Mr. Sidney Sanner,* and *Messrs. Van Ness & Redman,* for Respondent.

Contributory negligence upon the part of the warehouse company, if any there was, may not be imputed to Hunter & Anderson, nor to plaintiff as their equitable or legal assignee. (*The Bernina,* 12 Prob. Div. 58 ; see note to *Borough of Carlisle* v. *Brisbane,* 57 Am. Rep. p. 494, *et seq.; Bennett* v. *N. J. R. Co.,* 36 N. J. L. (7 Vroom.) 225 ; *N. Y. etc. R. Co.* v. *Steinbrenner,* 47 N. J. L. (18 Vroom.) 161 ; *Chapman* v. *New Haven R. Co.,* 19 N. Y. 341 ; *Dyer* v. *Erie R. Co.,* 71 N. Y. 228 ; *Transfer Co.* v. *Kelly,* 36 Ohio St. 86 ; *Wabash, etc. R. Co.* v. *Shacklett,* 105 Ill. 364 ; *Danville, etc. Turnpike Co.* v. *Stewart,* 2 Met. (Ky.) 119 ; *Louisville, etc. R. Co.* v. *Case,* 9 Bush. (Ky.) 728 ; *Cuddy* v. *Horn,* 46 Mich. 596 ; *Tompkins* v. *Clay St. R. Co.,* 66 Cal. 163.)

That negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power of control, is held in the following cases: *Kellar* v. *Shippel,* 45 Ill. App. 377 ; *Koplitz* v. *St. Paul,* 90 N. W. Rep. 794 ; *Hajsek* v. *Ry. Co.,* 94 *Id.* 609 ; *Pyle* v. *Clark,* 75 Fed. 644. The law undoubtedly is, as charged by the court, that "in order that a party may be relieved from liability for his own negligence by reason of the contributory negligence of the injured party, the negligence of the injured party must contribute to such injury as a proximate cause, and not as a remote cause or mere condition." (*T. & P. Ry.* v. *Levine,* (Texas) 29 S. W. 514 ; *G. C. & S. F. Ry.* v. *McLean,* (Texas) 12 S. W. 843 ; *Clay Co.* v. *B. & O.,* 67 N. E. 704 ; *Ins. Co.* v. *Ry. Co.,* 12 So. 159 ; *Ry. Co.* v. *Ins. Co.,* 35 So. 304 ; *A. T. & S. F. Ry.* v. *Geiser,* 75 Pac. 71 ; *Ry. Co.* v.

*Wilson,* 35 So. 561; *Turnbull* v. *Ry. Co.,* 120 Fed. 783; *So. Ry.* v. *Webb,* 59 L. R. A. 109; *C. H. & D. Ry.* v. *Kassen,* 16 L. R. A. 674; *Johnson* v. *St. Joseph,* 71 S. W. 106; *Duval* v. *At. Coast Line,* 46 N. E. 750; *Shearer* v. *Buckley,* 72 Pac. 76; *Ry. Co.* v. *Garteiser,* (Texas) 29 S. W. 939; *Ry. Co.* v. *Swinney,* (Texas) 78 S. W. 547; *Markham* v. *Nav. Co.,* (Texas) 11 S. W. 131; *Garteisen* v. *Ry. Co.,* (Texas) 21 S. W. 631.)

"Commerce is traffic, but it is much more. It embraces also transportation by land and water, and all the means and appliances necessarily employed in carrying it on." (*Chicago, etc. R. Co.* v. *Fuller,* 17 Wall. 568.) By the term "commerce" is meant not traffic only, but every species of commercial intercourse, every communication by land or water, foreign and domestic, external and internal. (*State* v. *Delaware, etc. R. Co.,* 30 N. J. L. 478.) "Commerce" is a term of the largest import. It comprehends intercourse for the purposes of trade in any and all its forms. (*Welton* v. *Missouri,* 91 U. S. 280; *Campbell* v. *Chicago, etc. R. Co.,* 86 Iowa, 589; *Council Bluffs* v. *Kansas City, etc. R. Co.,* 45 Iowa, 338.)

MR. COMMISSIONER CLAYBERG prepared the following opinion for the court:

Appeal by the Northern Pacific Railway Company from a judgment and order overruling its motion for a new trial.

It appears from the complaint that on June 30, 1900, the warehouse owned by the Custer County Wool Warehouse Company, and situated upon the right of way of the railway company, was ignited by sparks from one of defendant's engines and burned; that there was stored therein certain wool belonging to the firm of Hunter & Anderson, which was consumed with the building; and that this firm had their wool insured by the plaintiff company, which paid them the sum of $3,355.57, the value thereof. The complaint further alleges "that the fire by which said above referred to wool was destroyed as aforesaid was caused by sparks thrown out by a locomotive at said time and place owned, used and operated by the defendant herein,

which said sparks escaped from said locomotive, and fell in and upon said warehouse and its contents, and ignited the same, by reason of the defective construction and impaired condition of said locomotive, and the careless and negligent manner in which the same was then and there used and operated by defendant, and wholly by reason thereof, and without any fault on the part of said firm of Hunter & Anderson, or any member thereof, or plaintiff." Hunter & Anderson, prior to the commencement of the suit, assigned, transferred and set over to plaintiff all claim, demand and right of action growing out of the destruction of the wool, due to the alleged negligence of defendant.

The railway company, after certain admissions and denials of the complaint, alleged as a separate and affirmative defense that the wool warehouse company was a joint-stock association and a joint partnership, and that Hunter & Anderson were joint owners and partners therein; that said "joint-stock association" leased the ground upon which the warehouse was built from the railway company, and, by the terms of such lease, assumed all risk of loss to the building and contents occasioned by fire and sparks from locomotives, engines, etc.

For a second separate and affirmative defense, defendant alleges that the warehouse was carelessly and improperly built of highly inflammable material, which was well known to Hunter & Anderson when they placed their wool therein; that the plaintiff also well knew these facts when it insured said wool, and, in consideration of a higher premium, insured against this additional risk.

Plaintiff denied all the allegations of new matter by replication. The case was tried before a jury, and resulted in a verdict for plaintiff in the sum of $3,355.57, and judgment was entered thereon. Defendant made a motion for a new trial, which was overruled.

The only errors assigned in the brief of appellant are as follows: (1) The denial of defendant's motion for a new trial. (2) The overruling of defendant's objections to a certain question asked by plaintiff's counsel of witness Buckner. (3) Giv-

ing of instruction No. 26. (4 and 5) The refusal of defendant's offered instructions 35 and 36. (6) The refusal to allow defendant to show that Hunter & Anderson owned ten shares of stock in the warehouse company.

1. It is first urged by appellant in the argument that the destruction of the wool was proximately caused by an unprecedented wind blowing on the day of the fire, and would not have occurred, had there not been such wind. Appellant therefore claims that the injury was caused by the act of God, and not by its alleged negligence. We cannot consider this proposition, because the act of God is a defense to the action, and must be pleaded as such. We look in vain to appellant's answer for any allegations on which this defense may be based.

2. The next proposition argued is that of imputed contributory negligence on the part of Hunter & Anderson, plaintiff's assignees.

It is claimed that the warehouse company was bailee of Hunter & Anderson, and was guilty of contributory negligence, and that such contributory negligence is imputable to Hunter & Anderson, which would prevent a recovery by them, and therefore by plaintiff. This point is based upon the giving by the court of paragraph 26 of the charge, and the refusal of the court to give charges 35 and 36 requested by defendant. By refusing to give the charges requested, and by giving paragraph 26, it is claimed that the court practically withdrew from the jury the consideration of contributory negligence. This was right, on the ground that contributory negligence was not put in issue by the pleadings; and it may have been equally right on other grounds, appearing to the satisfaction of the court. Although the court below may not have based its action on the ground of want of an issue raised by the pleadings, yet, if its action was correct, even though based upon other grounds, it must be affirmed.

Under the decisions of this court, contributory negligence on the part of plaintiff is a defense which, in order to be relied on, must be pleaded by defendant, in cases of this character. (*Ball*

v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852, and cases cited.) The existence of contributory negligence need not be negatived in the complaint unless it appears from other allegations therein that the proximate cause of the injury was the act of the plaintiff. Upon the other allegations of this complaint, it is very apparent that the proximate cause of the injury in this case, for which suit was brought, was not the act of plaintiff, or of any of its predecessors or its assignees, but that of defendant. We find no allegations of such defense in the answer. True, the allegation is found in the complaint that the wool was destroyed by negligence of defendant, "and wholly by reason thereof, and without any fault on the part of said firm of Hunter & Anderson, or of any member thereof, or plaintiff." This allegation was denied generally in the answer. This is not sufficient to raise the issue of the contributory negligence of the plaintiff or its assignors. Plaintiff was not required, as above stated, to allege want of contributory negligence, and therefore its allegations above quoted are mere surplusage, and need not be proved. Defendant cannot be heard to assert that it is excused from pleading the defense of contributory negligence because of this allegation in the complaint.

3. The next alleged error argued was the overruling of defendant's objection to the following question asked of witness Buckner: "Q. With regard to the throwing of sparks by engines of the Northern Pacific Railway when pulling trains of that company over this road, how did the quantity and size of sparks thrown out of the engine on the night of the fire, and as to which you have testified with regard to quantity and size— How did that throwing of sparks compare with other engines throwing sparks along the line of this road?" Counsel for defendant interposed the following objection: "Objected to on the ground that the witness was not entitled to give an opinion by way of comparison between different engines; and, second, because inadmissible without a showing that the conditions as to the engines compared were practically the same." To this

question the witness answered: "As far as the size of them was concerned, I never noticed any particular size of them; but, in quantity, this engine threw more than I ever saw along at that time, or had seen."

The evident purpose of this testimony was to show negligence on the part of defendant, either in the equipment of the locomotive, or in its careless handling. The question did not call for expert testimony, and we think the evidence was properly received. As is well said by the Supreme Court of Wisconsin in the case of *Brusberg* v. *Milwaukee, etc. Railway Co.,* 55 Wis. 106, 12 N. W. 416: "A witness for plaintiff was allowed, against the defendant's objection, to testify how the fire thrown from the locomotive that morning, at the time it passed the plaintiff's barn, compared with the fire coming from the engines on that road before that time. We think this evidence was competent to show that it was at the time emitting an unusual quantity of fire. A similar objection was made to the same kind of testimony given by other witnesses of plaintiff. We see no reason for excluding this kind of evidence, and think the objections were all properly overruled." As further sustaining this proposition, the following cases might be consulted: *Johnson* v. *Chicago, etc. R. Co.,* 31 Minn. 57, 16 N. W. 488; *Chicago, etc. R. Co.* v. *McCahill,* 56 Ill. 28; *Wabash R. Co.* v. *Smith,* 42 Ill. App. 527; *Ruppel* v. *Manhattan R. Co.,* 13 Daly, 11; *Grand Trunk R. R. Co.* v. *Richardson,* 91 U. S. 454, 23 L. Ed. 356.

4. The next question presented for consideration is that the Custer County Wool Warehouse Company is not a corporation, but an association of individuals or a partnership. Appellants claim that, this being true, each stockholder or partner was bound by the provisions of the lease from the Northern Pacific Railway Company to the association or partnership, by which they waived all damages which might arise from a destruction of the warehouse by any act of the railway company.

The ground upon which the contention that the warehouse company was not a corporation is based is that there is no stat-

ute in Montana providing for the formation of corporations for the purpose of doing the business in which the wool warehouse company was engaged, and that the purposes mentioned in the statute for which corporations may be formed are exclusive.

We find that Subdivision 25 of Section 393 of the Civil Code provides that a corporation may be formed for "the transaction of any mercantile, commercial, industrial, manufacturing, mining, mechanical or chemical business." We think it is clear from the certificate of incorporation of the Custer County Wool Warehouse Company that its organization may be maintained under the purposes mentioned in the above-quoted subdivision. The business of carrying on a warehouse is closely connected with, and is a part of, the general commercial business of the country. The act of a warehouse company in storing goods for shipment is a necessary part of the transportation of the wool from the place of its production to the markets. Warehouses are therefore provided for this purpose, and the business of a warehouseman is just as much a link in wool commerce as its transportation to market by the railroad company. The business of warehousing grain has been recognized by the Supreme Court of the United States to be a part of the commerce of the country. (*Munn* v. *Illinois*, 94 U. S. 113, 24 L. Ed. 77.)

5. Further error is alleged upon the refusal of the court to allow defendant to show that Hunter & Anderson were the owners of ten shares of stock in the Custer County Wool Warehouse Company. We are of the opinion that the court did not err in excluding this evidence. If the Custer County Wool Warehouse Company was a corporation, it made no difference whether Hunter & Anderson were stockholders in it or not.

We are therefore of the opinion that there is no error disclosed by the record, and the case should be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.