RILEY, ADMINISTRATRIX, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO., APPELLANT.

· (No. 2,479.)

(Submitted February 10, 1908.  Decided February 17, 1908.)

[93 Pac. 948.]

*Railroads — Crossings — Injuries — Instructions — Ordinances —Last Clear Chance—Positive and Negative Evidence— Weight.*

Railroads—Injuries—Directed Verdict.
  1.  A motion of defendant railway company for a directed verdict in an action against it for negligently killing plaintiff's intestate while crossing its tracks within city limits was properly overruled, where, under the evidence, the question whether defendant was negligent was one for the jury, as was also the question of decedent's alleged contributory negligence.

Same—Instructions.
  2.  The giving of an instruction, in an action to recover damages from a railway company for the negligent killing of a pedestrian while cross-

ing its tracks, substantially consisting of a statement of the pleadings, was not reversible error.

**Positive and Negative Evidence—Weight.**

3. When one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the thing did not exist or happen, the so-called negative testimony is so far positive in its character that a court cannot say that it is entitled to less weight than the affirmative testimony.

**Same—Railroads—Injuries at Crossings—Instructions.**

4. In an action for damages for the death of one struck by an engine while crossing defendant's tracks, there was evidence for defendant that the bell was ringing and a headlight burning. Plaintiff's witnesses testified that they did not hear any bell or see any light. Defendant's witnesses swore that they did not see the deceased at all, although the engineer claimed he was looking toward the very spot where the accident happened. *Held,* that the court properly refused to charge that it was proved by the uncontradicted evidence that the bell was ringing and the headlight burning, that the ringing and the light were a sufficient warning, and that, if no other negligence was shown, the verdict must be for defendant.

**Railroads—Personal Injuries—Instructions.**

5. The court in the case above referred to having distinctly instructed the jury to limit their consideration to acts of negligence proven by the evidence, it was not prejudicial error to refuse to charge, relative to an allegation in the complaint that the speed of the engine exceeded a certain limit—a fact unproven—that the evidence uncontradictedly showed that the speed of the engine was less than the prescribed limit, and that this question should not be considered, but that, if no other negligence appeared, verdict should be for defendant.

**Same—Ordinances—Instructions.**

6. The absence of a city ordinance requiring a railway company to provide a flagman at a crossing is not conclusive upon the question whether or not the company was negligent in failing to provide one of its own accord; it was, therefore, not error to refuse to charge in the action above set forth that an ordinance, alleged in the complaint to have been violated, had no reference to the crossing at which plaintiff's intestate was killed.

**Same—Evidence—Admissibility—Harmless Error.**

7. In an action for the death of one struck by a switch-engine while crossing defendant's tracks, where it was shown that there was a gate at each side of the crossing, but that on account of the lessened travel between the hours of 12 o'clock midnight and 6 o'clock in the morning the gates were not used, and that the deceased was killed during such hours, and further, that the mayor had never designated the crossing as one where a flagman was required, it was not prejudicial to defendant to admit in evidence an ordinance requiring a railroad to keep a flagman at such crossings unprotected by gates as may be designated by the mayor from time to time, since the jury must have known that the mayor had never required a flagman at the crossing in question, and therefore could not have considered that the company was negligent in failing to provide a flagman at such crossing on account of the fact that the mayor had designated it as one of the crossings where a flagman should be employed.

**Same—Instructions.**

8. Nor was it error to refuse to instruct the jury in the above action that, in determining whether a reasonable person could have seen the approaching engine, the jury could take into consideration what other

persons coming after decedent saw in this regard. This was proper matter for argument to the jury and not for an instruction to them.

Same—Instructions—Applicability to Evidence.

9.   Where in an action against a railway company for the negligent killing of a person it was not shown that decedent had assumed a position of known danger, or that the place where he was killed was not, apparently, a place of safety, the court correctly refused to charge that in thus failing to exercise ordinary care or reasonable prudence he was guilty of contributory negligence and defendant company would not be liable, where in other instructions the question of contributory negligence had been fully covered; the requested charge was properly refused, also, for failing to refer to the duty of the defendant to exercise ordinary care to protect the deceased in the position in which he found himself.

Same—Instructions—Refusal.

10.   In an action for the death of one struck by an engine while crossing defendant's tracks and attempting to get out of the way of a coming passenger train, there was no error in refusing to charge that in any event, if the deceased was at fault in putting himself in a position where a movement to avoid the dust of the passenger train would bring him within striking distance of the switch-engine, there could be no recovery on the ground of the speed of the passenger train, since the instruction omitted the element of defendant's duty to take reasonable care to avoid injuring the deceased in the position in which he placed himself.

Same.

11.   Error was not committed in refusing to instruct the jury in the case mentioned above, that there was nothing in the evidence showing traffic conditions, at the crossing where the accident occurred between the early hours in the morning when deceased was killed, requiring the operation of crossing-gates independently of any ordinance or regulation; the giving of this instruction would have withdrawn from the jury the question at issue, whether defendant exercised ordinary care in moving its engine across the street under all the circumstances disclosed.

Same—Ordinary Care—Question for Jury.

12.   Whether or not the railway company in the case above exercised ordinary care in moving its engine over a crossing provided with gates while the gates were up, and in the absence of a watchman in the tower, was a question for the jury.

Same.

13.   It was also a question for the jury to decide whether the defendant company, in the exercise of ordinary care, might have discovered the position of the deceased in time to have avoided injuring him, irrespective of the question whether deceased had exercised ordinary care in going into the place where he was killed, or not.

Same—Care Required.

14.   Upon a railroad company is imposed the duty of using all reasonable efforts to avoid injury to one who has accidentally placed himself in a position of danger, if it knows the peril, or, by the exercise of reasonable care, might have known it.

Negligence—Contributory Negligence—Last Clear Chance—Instructions—Argument—Issues.

15.   Where all the testimony in the above case relating to the last clear chance to avoid the injury went in without objection under the issues made by the complaint and answer, the doctrine of the last clear

chance was a legitimate subject for argument to the jury and of instruction by the court, though no such issue was raised by the reply to the plea of contributory negligence.

*Appeal from District Court, Yellowstone County; C. H. Loud, Judge.*

ACTION by Esther L. Riley, as administratrix, against the Northern Pacific Railway Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed. .

*Messrs. Wallace & Donnelly*, for Appellant.

"If one, upon approaching a railroad crossing, intending to pass over it, fails to make a vigilant use of his senses—that is, to look or listen, and to *stop* for this purpose, if necessary, to learn if there is danger—and by reason of this failure to exercise this precaution he is injured, then he contributes directly to such injury, and cannot be heard to say that the railroad company did him the injury, and should compensate him for its wrong." (*Hunter* v. *Montana C. Ry. Co.*, 22 Mont. 525, 57 Pac. 140.) Open gates at a railroad crossing do not excuse a pedestrian's failure to exercise care in crossing the tracks. (*Koch* v. *Southern California Ry. Co.*, 148 Cal. 677, 113 Am. St. Rep. 332, 84 Pac. 176, 4 L. R. A., n. s., 521; *St. Louis etc. Ry. Co.* v. *Chapman*, 140 Fed. 129, 71 C. C. A. 523; *McClary* v. *Chicago etc. Ry. Co.*, 46 Fed. 343.) Plaintiff's evidence on the issue whether there was a headlight on the rear of the switch-engine, and whether the bell was rung, left nothing to submit to the jury on this point. (*Culhane* v. *New York etc. Ry.*, 60 N. Y. 133-137; *Hubbard* v. *Boston etc. Ry. Co.*, 159 Mass. 320, 34 N. E. 459; *Keiser* v. *Lehigh Valley Ry. Co.*, 212 Pa. St. 409, 108 Am. St. Rep. 872, 61 Atl. 903; *Holmes* v. *Pennsylvania Ry. Co.* (N. J.), 66 Atl. 412.) A railroad crossing, from its very nature, is always a place of danger, and the traveler has no right to omit any of the care which the law demands of him upon the assumption that due care will be exercised in the operation of

the train.   (*Hutson* v. *California Southern Ry. Co.*, 150 Cal. 701, 89 Pac. 1093.)

Respondent sets up the newly advanced idea that the defense of contributory negligence is unavailing to the defendant because of the doctrine of the last clear chance.   We answer: (1) The issue of last clear chance was not presented by the reply. Negligence was plead, contributory negligence was plead, and the reply merely denied the contributory negligence, but set up no matter in the nature of subsequent negligence in avoidance.   If it be said that the facts would necessarily spring from the occurrence, it is no answer, as this is true also of contributory negligence.   Nevertheless, the plea is always required because it is matter that may be waived; and this court in *Orient Ins. Co.* v. *Northern Pacific*, a case in which the proofs were submitted as if the issue was framed, refused to consider the question despite the consent of counsel on the trial, because contributory negligence was not affirmatively plead in the answer. (See, also, *Holmes* v. *Pennsylvania Ry. Co.* (N. J.), 66 Atl. 412.) (2) The doctrine of last clear chance never applies when the negligence of the deceased is operative up to the moment of the injury, and in this case the deceased stepped back within range of the switch-engine just before he was struck and while the switch-engine was on the east walk.   (*Matteson* v. *Southern Pac. Ry.* (Cal. App.), 92 Pac. 101.)   And (3) The dust cloud, testified to, would have prevented those on the engine from seeing the deceased or from doing anything to prevent the accident. (*Baker* v. *Tacoma Eastern Ry. Co.* (Wash.), 87 Pac. 826.)

*Mr. Fred, H. Hathhorn,* and *Mr. George W. Farr,* for Respondent.

Plaintiff is entitled to the benefit of the presumption that deceased was exercising due care, unless it conclusively appears from the evidence adduced that the deceased was guilty of negligence directly contributing to his own injury.   (*Weller* v. *Chicago etc. R. R. Co.,* 164 Mo. 180, 86 Am. St. Rep. 592, 64

S. W. 141; *Riska* v. *Union Depot Ry. Co.,* 180 Mo. 168, 79 S. W. 445.)   It was negligence to move the switch-engine backward while the passenger train was in motion, and appellant will be charged with the knowledge that the bell on the engine could not be heard when a passenger train was running at excessive speed, and with the duty of observing greater precaution in the manner of the operation of the engine, and whether it did observe all the precaution required of it was a question for the jury.   (*McWilliams* v. *Detroit Central Mills Co.,* 31 Mich. 274; *Cooper* v. *Lake Shore etc. Ry. Co.,* 66 Mich. 261, 11 Am. St. Rep. 482, 33 N. W. 306; *Lehman* v. *Eureka Iron and Steel Works,* 114 Mich. 260, 72 N. W. 183; 2 Thompson on Negligence, secs. 1571, 1594; *Union Pac. Ry. Co.* v. *Connolly* (Neb.), 109 N. W. 368; *Louisville etc. Ry. Co.* v. *Lucas,* 80 Ky. Law. Rep. 359, 98 S. W. 310; *Schleiger* v. *Northern Terminal Co.,* 43 Or. 4, 72 Pac. 324.)   The crossing was an exceedingly dangerous one, and more care was therefore required of the appellant. (*Bilton* v. *Southern Pac. Ry. Co.,* 148 Cal. 443, 83 Pac. 440; *McCabe's Admx.* v. *Maysville etc. Ry. Co.,* 28 Ky. Law Rep. 536, 89 S. W. 683.)

The duty of deceased to look does not mean that he must be constantly turning from one direction to the other.   (*St. Louis etc. Ry. Co.* v. *Wyatt,* 79 Ark. 241, 96 S. W. 376; *Chicago etc. R. Co.* v. *Pulliam,* 111 Ill. App. 305, affirmed in 208 Ill. 456, 70 N. E. 460; *Chesapeake etc. R. Co.* v. *Vaughn,* 30 Ky. Law Rep. 215, 97 S. W. 774.)   It will not be presumed that he recklessly and carelessly imperiled his own life.   (*Cromley* v. *Pennsylvania Ry. Co.,* 208 Pa. St. 445, 57 Atl. 832.)   It is not consistent to argue that the deceased might have escaped but for a rash attempt to save himself, with appellant's contention that he lost his life as a result of his own carelessness in not looking for the train, or heeding its signals.   (*Louisville etc. R. Co.* v. *Lucas, Admr., supra.*)   Deceased was only required to do what was reasonable under the existing circumstances.   And the reasonableness of his efforts to escape injury after discovery of the danger was a question for the jury.   (*Bilton* v. *Southern Pac.*

*Ry. Co.,* 148 Cal. 443, 83 Pac. 440.)   Nor was he bound to the same vigilance to stop, look and listen as he would if there had been no gates, for there was an implied invitation to cross and an assurance of safety from danger of any passing train, by reason of the gates being up and open.   (*Koch* v. *Southern Ry. Co.,* 148 Cal. 677, 113 Am. St. Rep. 332, 84 Pac. 176, 4 L. R. A., n. s., 521, and case note, cited by appellant.)   Where a railroad company has erected gates at a dangerous crossing, it is its duty to slacken speed when the watchman is off duty and the gates are open.   (*Schwartz* v. *Delaware L. & W. R. Co.,* 211 Pa. St. 625, 61 Atl. 255; *Stegner* v. *Chicago etc. Ry. Co.,* 94 Minn. 166, 102 N. W. 205.)

The defense of contributory negligence will not avail the appellant, if, by reasonable care on the part of those in charge, the accident could have been avoided; and if by exercising ordinary care, the servants of the appellant could have discovered the peril of the deceased in time to stop the engine, or if in fact they did see the deceased and neglected to stop the engine, the case is one for the jury.   (*Yeaton* v. *Boston & M. R. R.,* 73 N. H. 285, 61 Atl. 523; *Fearsons* v. *Kansas City El. Ry. Co.,* 180 Mo. 208, 79 S. W. 394; *Turnbull* v. *New Orleans & C. R. Co.,* 120 Fed. 783; *Louisville & N. R. Co.* v. *Krey,* 16 Ky. Law Rep. 797, 29 S. W. 869; *Kelley* v. *Hannibal & St. J. Ry. Co.,* 75 Mo. 138; *Central Texas etc. Ry. Co.* v. *Gibson,* 35 Tex. Civ. App. 66, 79 S. W. 351; *Cooper* v. *Lake Shore etc. Ry. Co.,* 66 Mich. 261, 11 Am. St. Rep. 492, 33 N. W. 306; *Illinois Central R. Co.* v. *Hayes' Admr.,* 27 Ky. Law Rep. 91, 84 S. W. 338; *Nashua Iron and Steel Co.* v. *Worcester etc. R. R. Co.,* 62 N. H. 159, 164; *Atlantic Coast Line Ry. Co.* v. *Taylor,* 125 Ga. 454, 54 S. E. 622.)   The following cases illustrate the amount of vigilance required on the part of railway companies in backing trains over crossings where another train is passing on an adjoining track, and hold that whether sufficient care and caution has been exercised and observed is a question for the jury from the circumstances surrounding each case: *Illinois Central R. Co.* v. *Hays,* 27 Ky. Law Rep. 91; *McWilliams* v. *Detroit Cen. Mills*

*Co.*, 31 Mich. 274; *Cooper* v. *Lake Shore etc. Ry. Co.*, 66 Mich. 261, 11 Am. St. Rep. 492, 33 N. W. 306; *St. Louis etc. Ry. Co.* v. *Johnson*, 74 Ark. 372, 86 S. W. 282; *Atlantic Coast Line Ry. Co.* v. *Taylor*, 125 Ga. 454, 54 S. E. 622; *Massey's Admx.* v. *Southern Ry. Co.*, 106 Va. 515, 56 S. E. 275; *Chesapeake & Ohio Ry. Co.* v. *Vaughn*, 30 Ky. Law Rep. 215, 97 S. W. 774; *Union Pac. Ry. Co.* v. *Connolly* (Neb.), 109 N. W. 368.

In the case of *Christensen* v. *Oregon Short Line Ry. Co.*, 29 Utah, 192, 80 Pac. 746, the court held that while the defendant's failure to keep a flagman, and to maintain gates at the crossing, was not alleged in the complaint as a ground of negligence, yet it was not error for the court to admit evidence to show that there was neither gates or flagman there. (See, also, *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Butts* v. *Atlantic etc. Ry. Co.*, 133 N. C. 82, 45 S. E. 472; *Ortolano* v. *Morgan's etc. Ry. Co.*, 109 La. 902, 33 South. 914; *Aurora Elgin etc. Ry. Co.* v. *Gary*, 123 Ill. App. 163; *Illinois Cent. R. R. Co.* v. *Coley*, 28 Ky. Law Rep. 336, 89 S. W. 234, 1 L. R. A., n. s., 372.)

MR. JUSTICE SMITH delivered the opinion of the court.

Between 2 and 3 o'clock on the morning of July 18, 1905, two men, named Reuben A. Riley and George Cresap, were struck and instantly killed by a switch-engine of the Northern Pacific Railway Company on the Twenty-seventh street crossing of the tracks of that company in Billings, Montana. This action was begun by the plaintiff, the widow and administratrix of the estate of Reuben A. Riley, to recover damages for his death, on the ground that it was due to the negligence of the railway company and its employees. Foster L. Skillman, the engineer in charge of the switch-engine, was joined with the railway company as defendant; but no verdict was returned or judgment entered against him. The railway company appeals from a judgment against it, founded upon a verdict for $12,600, and from an order denying its motion for a new trial.

.As is well said in the brief of counsel for the appellant, the negligence relied on by the plaintiff is set forth in the complaint with a degree of fullness seldom found in cases of this character. The tracks of the defendant company extend east and west through the city of Billings. The streets immediately north and south, and running parallel with them, are, respectively, Montana avenue and Minnesota avenue. A number of streets cross the tracks at right angles from north to south, among them Twenty-seventh street. This last-named street is the first street east of the depot of the defendant, and is one of the streets most used in passing to and fro between Montana and Minnesota avenues. At the time of the accident the defendant had seven tracks constructed and in use across Twenty-seventh street. Starting with the most northerly track, and numbering them as they lay, track No. 2, or the first track south of the most northerly track, was the main line, tracks Nos. 1, 3, 4, 5, 6, and 7 being sidings. The distance from the south rail of the main line to the north rail of track No. 3 was ten and four-tenths feet. Sidewalks twelve feet wide extend north and south along each side of Twenty-seventh street. The street is eighty feet in width, including the sidewalks, and fifty-six feet in width between the sidewalks. The planking of the walk is practically level with the rails of the track. Between tracks 1 and 2, and a little to the east of the east sidewalk, there is a watchtower from which crossing-gates are raised by a man stationed there. A watchman was kept in the tower from 7 A. M. until midnight. From about 9 or 10 o'clock in the evening of July 17th until shortly before he was killed the deceased was at the Topic Saloon or Theater on Minnesota avenue, about two hundred and fifty feet east of the east walk of Twenty-seventh street, and was expecting to meet his wife, the plaintiff, who was coming to Billings from Miles City on train No. 3, due to arrive in Billings at 2:05 A. M., and which did arrive at 2:23 A. M.

All that is known of the manner in which deceased was killed is what was told on the stand by plaintiff's witness Mueller. The witnesses Hayden and Rex were with Mueller at the time, but

neither would believe that a man had been struck when Mueller affirmed that he had observed the fact. The testimony of Mueller was, in substance, as follows: Just before the accident Mueller, Hayden and Rex were together on Minnesota avenue, west of Twenty-seventh street. Hayden was to leave for the west on train No. 3, and Mueller and Rex were going to see him off. They heard the train whistle, and the three men came together to the southwest corner of Minnesota avenue and Twenty-seventh street, and crossed diagonally to the northeast corner, striking the east sidewalk of Twenty-seventh street near the south corner of a woolhouse there situated, and then walking north on the east walk of Twenty-seventh street. As they crossed to the woolhouse corner, Mueller noticed two men right ahead. The crossing-gates were up, and the witness saw no one in the tower. When he first saw the two men, they may have been on track 3 or track 4, and were going north on the east sidewalk. By the time witness had walked probably fifty feet on the east sidewalk the two men ahead stopped. The witness did not know who they were or why they stopped, though the passenger train was going across Twenty-seventh street just then, and they stopped on the south side of the passenger train. He estimated that the passenger train, which was on the main line going west, was running fully twenty miles an hour until it struck the Twenty-seventh street crossing, and was going very fast across the street. As this train No. 3 was crossing the street he noticed a switch-engine backing up from the west side of Twenty-seventh street on track No. 3, the first track south of the main line. It had been standing on the west side of the street, and when he saw it start to back up train No. 3 was in motion across Twenty-seventh street. The train and the engine passed at the same time, train No. 3 moving west, and the switch-engine backing east across that street. When the switch-engine crossed the east walk, the witness and his two friends stopped to let it pass. He thought that he and his friends were then on or just north of track No. 4, within six or eight feet of the switch-engine. Just as he stopped he saw the men he had noticed in front of him. One of them

stepped back, and witness saw him fall.  As the passenger train was coming in the witness saw a cloud of dust roll up beneath the train.  He could not say to what extent it rolled up, any more than that he saw the dust.  It was sufficient so that he could see it from where he stood.  He could not say for sure whether the man who, as he had said, stepped back, had really stepped back, or whether he had faced the other way, and stepped forward, but, whichever it was, the movement was made just as the passenger train was alongside where this man stood.  The witness thought the man was standing between track No. 2 and track No. 3, on which the switch-engine was moving when he made this backward movement.  On seeing the man fall, witness said to his friends, ''There was a man run over.''  After the switch-engine had passed they saw a corpse lying twenty feet away. The witness went to send in an alarm to the police station, and his friends ran east to notify the switching crew.  A little east of the point where lay the first body, a second body was found, The bodies were those of Reuben A. Riley and George Cresap. The foregoing is a summary of Mueller's testimony, substantially as set forth in the brief of appellant.

Now as to the pleadings.  The plaintiff charged in her complaint that the negligence of the defendant consisted in the following: (1) Failure to lower the crossing-gates before the deceased started across the tracks; (2) excessive speed of train No. 3 in crossing Twenty-seventh street; (3) excessive speed of the switch-engine in backing across Twenty-seventh street; (4) failure of the employees in charge of the switch-engine to give any warning, or ring a bell, or blow a whistle, in backing across the street; (5) negligence in moving the switch-engine across the street while the passenger train was coming into the depot; (6) failure to have a switchman at the rear end of the switch-engine while it was backing across the street; (7) failure to have any light or signal at the rear end of the switch-engine to warn persons of its approach; (8) failure of the engineer and fireman of the switch-engine to keep a lookout for persons on the street while they were backing across it; and (9) failure to have

a flagman at the crossing to warn people of the approach of trains, by waving a red flag, as required by the city ordinances.

The defendant railway company denied negligence on its part, or that of its servants, and alleged that the death of Riley was caused by his contributing fault and carelessness.

The first error complained of is the refusal of the court to direct a verdict for the defendant at the close of plaintiff's case. We are of opinion that the court was right in refusing to grant this motion. The specifications of negligence set forth in the complaint, numbered from 3 to 9, comprehend, in substance, the proposition that the railroad company was negligent in not properly guarding this crossing while the switch-engine was passing over it. Whether the company was or was not negligent in this regard was a proper question to be submitted to the jury under the testimony of Mueller, as herein recited. We think the question of contributory negligence on the part of the deceased was also properly submitted. We cannot say that different minds might not properly reach different conclusions relative to both of these questions under the evidence.

The second contention is that the court erred in giving instruction No. 1 to the jury. This instruction is very long, and it is unnecessary to repeat it here. It is, in effect, a statement of the matters set forth in plaintiff's complaint, including the various reasons assigned by the plaintiff as a basis for her averment that the defendant was negligent. This instruction embodies the language of the complaint almost literally, and, regarding it as merely a statement of the issues made by the pleadings, we find no error in it, but think the jury must have understood that it was simply a statement of what the plaintiff claimed and what the defendant relied upon as a defense. In this connection it is claimed by the defendant that the reason the giving of instruction No. 1 may have been prejudicial was, because it contained a recital of claims made by the plaintiff which were not afterward substantiated by testimony, and that the court refused to give certain other instructions eliminating from the

consideration of the jury those alleged acts of negligence which were unproven.

The next instruction complained of is No. 9, which reads as follows: "The complaint in this action sets forth the particular respects in which the plaintiff claims there was a breach of duty. The plaintiff, having detailed thus the features of claimed negligence, must be limited to those specifically, and you have no right to consider in this case any other alleged grounds of negligence than those enumerated in the fifth paragraph of the complaint, and it is your duty as jurymen to limit your deliberations to those and to those only in so far as the alleged fault of the defendant railway is concerned." This instruction is so palpably in favor of the defendant that it cannot be complained of except in this regard—that the court, having limited the matters to be considered by the jury to the specific acts of negligence set forth in the complaint, should have gone further and given other instructions, taking from the jury's consideration accusations of negligence which the defendant claims were not proven. We shall consider this later.

It is contended that the court erred in refusing to give defendant's requested instructions Nos. 33, 34, 35, and 36. Those tendered instructions read as follows:

"33. As to the alleged ground of negligence set forth in subdivision B of said paragraph of the complaint, which claims that the switch-engine was moved without a light, or any warning by bell, or otherwise, I advise you that, though it was proven that there was no switchman or other person on the rear of such switch-engine as it moved backward, yet it is proved by the uncontradicted evidence that the bell was ringing, and that there was a headlight upon the rear end of the switch-engine, lit, and shining in the direction toward which the engine was moving, that the ringing of the bell and the presence of the headlight were a sufficient warning, and that the law did not impose upon the defendant any duty in addition to have any person upon the footboard of the rear of the engine to give additional warning, and that, therefore, the averments of this subdivision are un-

proven, and that the absence of a switchman or other person at the rear of said engine would not be a ground of recovery in this case, and if there were no other negligence proven, your verdict must be for the defendant railway.

"34. As to the alleged negligence set forth in subdivision C of said paragraph of the complaint, the alleged failure to ring the bell or blow the whistle while the switch-engine was crossing Twenty-seventh street, and the averment that its speed then was greater than six miles per hour, I advise you that the evidence uncontradictedly shows that the bell was rung, and that the rate of speed of the switch-engine was less than six miles per hour, and that this alleged ground of negligence is not only unproven, but is disproved, and you cannot consider it as a ground of recovery, and, if no other negligence were proven, your verdict must be for the defendant.

"35. As to the alleged ground of negligence set forth in subdivision F of paragraph 5 of the complaint, viz., the allegation that defendant's engineer did not ring the bell as required by the provisions of section 2 of the same article of the Billings ordinances, I advise you that the ringing of the bell by the fireman of the locomotive would be a compliance with this ordinance. I further advise you that the evidence uncontradictedly discloses that the bell was rung as required by this ordinance, and that you cannot consider this question as a ground of recovery, because no breach of any duty in this respect has been proven.

"36. As to the specifications of the alleged fault of the defendant company contained in subdivision G of the fifth paragraph of the complaint, the violation of section 3 of article 2 of chapter 12 of the Billings ordinances, dealing with flagmen, I instruct you that that ordinance has no application to this case, and that, while it was read in evidence, and it appeared that there was no flagman at this crossing, there was no duty to have a flagman at this crossing, and the failure to have a flagman at this crossing cannot be considered by you as a ground of recovery, and, if no other alleged negligence than this were proven, your verdict must be for the defendant railway."

Appellant affirms that it was proven by the uncontradicted evidence that the bell was ringing, and that there was a headlight upon the rear of the switch-engine. On the part of the defendant there was positive testimony that the bell was ringing and the light burning. The plaintiff's witnesses simply testified that they did not hear any bell or see any light. Appellant argues that this negative testimony is of no weight, in view of the positive testimony opposed to it. Ordinarily, when one witness testifies positively that a certain thing existed or happened, and another witness, with equal means of knowing, testifies that the thing did not exist or happen, the so-called negative testimony is so far positive in its character that a court could not say that it was entitled to less weight than the affirmative testimony. (*State* v. *McLeod,* 35 Mont. 372, 89 Pac. 831.) But the appellant says that in this case the testimony that the witnesses did not hear the bell rung or see the light burning is in no sense a statement that the bell was not rung or the light not burning, and consequently the positive statements are uncontradicted. But, in passing upon the weight to be given to this testimony, the jury had a right to take into consideration all of the surrounding circumstances, including the fact that defendant's witnesses, who were its employees, swore that they did not see the deceased at all, although, if the light had been burning, as these witnesses testify it was, it seems almost impossible that the engineer, who claims he was looking toward the very spot where the travelers were, should not have seen them. In view of this situation, it is equally clear to us that the jury had a right to take into consideration the testimony regarding the headlight in determining whether or not the defendant's witnesses were entitled to credit in testifying that the bell was ringing. This being the case, the court properly refused to give proposed instruction No. 33 to the jury.

What is said last above partly covers the action of the court in refusing to give proposed instruction No. 34. In addition to that, however, there is incorporated in this proposed instruction the feature that the evidence uncontradictedly shows that

the rate of speed of the switch-engine was less than six miles per
hour; and defendant argues that for this reason the court should
have taken from the jury the right to consider the speed of the
switch-engine in determining their verdict. Let it be remem-
bered that instruction No. 1 is simply a recital of the issues made
by the pleadings, and nowhere in the instructions did the court
tell the jury that they should consider the speed at which the
switch-engine was going in arriving at a verdict. The error
complained of is the refusal of the court to tell the jury that
they must not consider the matter at all, for the reason that the
evidence wholly fails to substantiate this allegation of negli-
gence. It is true that the evidence does show positively that the
switch-engine was not moving at a rate of speed exceeding six
miles an hour. How can it possibly be conceived that the jury
determined that the engine was exceeding six miles per hour
and considered that fact in arriving at a verdict? This jury,
of course, knew that there was no testimony whatsoever war-
ranting them predicating negligence upon the speed of the
switch-engine. They must have known it; therefore they could
not have given any consideration to the subject in determining
the liability of the defendant. It would have been proper for
the court to withdraw this matter from the jury's consideration
peremptorily, and we do not desire to be understood as holding
that, in a proper case, the court should not do so. In this case,
however, we are satisfied, in view of the state of the testimony,
that no prejudice resulted to the defendant from the refusal
of the court. Note, also, the following instruction given by the
court, limiting the jury to a consideration of those "faults
* * * proven by the evidence": "If you fail to find fault
on the part of the defendants in the respect in which you are
told above that under this complaint you may consider whether
they are at fault, you will proceed no further in the case, but
stop your deliberations, and return a verdict for the defendants.
If you should find that fault in a respect which I have told you
would entitle the plaintiff to recover, and which has been proven
by the evidence, then you will next proceed to consider the ques-

tion as to whether the deceased (Riley) himself was guilty of any fault contributing to his own death.''

So far as proposed instruction No. 36 is concerned, it may be said, generally, that the question of the negligence of a railroad company in failing to provide a flagman at a crossing cannot alone be determined by ascertaining whether or not a city has by ordinance required that a flagman should be employed. It is oftentimes a question of fact, to be determined by the jury, whether, in the exercise of that degree of care with which the defendant is charged, it should or should not maintain a flagman. The existence of an ordinance requiring a flagman may be some evidence of the necessity for one, but the absence of such an ordinance is not conclusive upon the question.

The defendant also contends that the court erred in admitting in evidence, over its objection, section 3 of article 2, chapter 12, of the Ordinances of the City of Billings, providing that a railroad company shall be required to keep a flagman at such crossings, not protected by gates, as may be designated by the mayor from time to time, ''whose duty it shall be to warn people of the approach of engines or trains by the waving of a red flag, so as to fully protect the public as to their persons and property.'' The testimony shows that there was a gate on each side of this Twenty-seventh street crossing, but that on account of the lessened travel between the hours of 12 o'clock midnight and 6 o'clock in the morning the gates were not used. It is argued by counsel for the railroad company that no flagman was required at this crossing, because it was a crossing where gates were used, and, in addition to that, that the mayor had never designated this crossing as one where a flagman was required. The testimony shows this latter contention to be true. But we do not think it was prejudicial error on the part of the court to admit this evidence over the defendant's objection, because the jury must have known that the mayor had never designated a flagman at this crossing, and therefore could not possibly have been misled to the prejudice of the defendant by

this evidence, and could not have considered that the company was negligent in failing to provide a flagman at this crossing on account of the fact that the mayor had designated it as one of the crossings where a flagman should be employed.

Again it is said that the court erred in refusing this tendered instruction: "In determining whether a reasonable person so going along Twenty-seventh street would have seen the switch-engine you may consider what other persons coming after the deceased along the same walk and line of travel did see in that regard." The refusal of the court was not error. The testimony of what others saw was in the record. It was a proper subject of argument to the jury. It had not been withdrawn from their consideration. The presumption is that, as reasonable men, they gave this testimony the same consideration, as jurors, that, as men, they would give it in deciding an important question outside of the jury-room. How could they overlook the fact that others saw the switch-engine moving? The writer of this opinion thinks it is a reflection upon a juror's intelligence to assume that he will overlook testimony unless it is specifically pointed out to him by the court, or will neglect to consider it unless told to do so. It is the duty of the attorneys to suggest these argumentative matters to the jury, not of the court.

Defendant requested the trial court to give two instructions, as follows:

"7. If in passing track No. 4, the second track south of the main line track, on which train No. 3 was approaching, the deceased, Riley, could have seen the conditions in time to have taken a position of safety with regard to track No. 3 as well as track No. 4, it was his duty, in the exercise of ordinary care, to have done this, and, if he did not, and his failure to do so caused his death, the plaintiff cannot recover in this action.

"8. Knowing that train No. 3 was approaching the passenger depot, and would cross the Twenty-seventh street crossing, he was bound to so conduct himself as to that train as not to put himself in a known place of danger while it was passing,

and, if reasonable prudence had required him to take a position to the southward of track No. 3 because of the slight space between it and the track on which the passenger train was coming, and he did not do so, and his failure to do this resulted in his being struck and killed, this of itself and alone would constitute contributory negligence, and demand a verdict for the defendant railway.''

The fault of these instructions lies in the fact that they are not applicable to the evidence in the case. There is no evidence that the deceased assumed a position of known danger, or that the place where he was was not a place of safety, apparently, when he went into it. These proposed instructions omit any reference to the duty of the defendant to exercise ordinary care to protect the deceased in the position in which he was. The court fully covered the question of contributory negligence in other instructions.

Instruction No. 26, proposed by the defendant, reads as follows: ''In any event, if Riley was at fault in putting himself in a position where a movement to avoid the dust of train 3 would bring him within striking distance of the switch-engine, there could be no recovery on the ground of the speed of train No. 3.'' The court refused to give the instruction, and the action is assigned as error. This instruction also omits the element of defendant's duty to take reasonable care to avoid injuring Riley in the position in which he placed himself.

It is insisted that the court erred in refusing to give defendant's instruction No. 29, which reads as follows: ''I further instruct you that there is nothing in the evidence showing any traffic conditions or travel conditions between the hours of 2 A. M. and 4 A. M. of any day at the said Twenty-seventh street crossing requiring the operation of said gates during that time independently at [of?] law, ordinance, or regulation.'' If this instruction had been given, it would have withdrawn from the consideration of the jury a part of the evidence on the very question they were to decide, that is, whether the defendant exercised ordinary care in moving the switch-engine across Twenty-

seventh street, under the circumstances disclosed by the record. The question of what precautions were necessary to be observed in the exercise of reasonable care, under the circumstances, was for the jury to decide.

It is contended by the respondent that the deceased was justified in assuming that the crossing was safe because the gates were up; while the defendant claims that the fact of the gates being up is immaterial, because the deceased knew that No. 3 was about to cross the street. It is unnecessary to decide this point, because the jury had a right to consider that the gates were up, in deciding whether or not the defendant exercised ordinary care in moving the switch-engine under the circumstances that the gates were up and there was no watchman in the tower.

It was a question for the jury to decide whether the defendant, in the exercise of ordinary care, might have discovered the position of the deceased in time to have avoided injuring him, and this, whether the deceased had exercised ordinary care in going into the place where he was, or not. Upon a railroad company is imposed the duty of using all reasonable efforts to avoid injury to one who has accidentally placed himself in a position of danger, if the peril is known, or, under certain circumstances, by the exercise of reasonable care, might have been known. (See 1 Thompson on Negligence, sec. 239; 2 Thompson on Negligence, sec. 1596.)

But it is claimed by the appellant that the doctrine, if such it may be termed, of the last clear chance, cannot be invoked or relied upon by the plaintiff, because no such issue was raised by the reply. Counsel cite the case of *Orient Ins. Co.* v. *Northern Pacific Ry. Co.*, 31 Mont. 502, 78 Pac. 1036, in which this court held that in that particular case the defense of contributory negligence could not be relied upon as a basis for proposed instructions, because not pleaded in the answer. There may be cases where the claim that the defendant had the last clear chance to avoid the injury, being relied upon by the plaintiff as a basis for affirmative testimony in rebuttal, must be set forth in a re-

ply in answer to defendant's plea of contributory negligence. But in this case no such necessity arose. The only rebuttal testimony offered related to the deceased's condition, whether he was under the influence of liquor. All of the testimony relating to the last clear chance went in under the issues made by the complaint and answer, without objection. Under these circumstances the plaintiff could rely upon the so-called doctrine. It was a legitimate subject for argument to the jury, and of instruction by the court. (See *Nelson* v. *Boston & Mont. Con. C. & S. M. Co.*, 35 Mont. 223, 88 Pac. 785.) Not only that, but we think the claim that defendant had the last clear chance is comprehended within the specific allegations of the complaint, and that an inference in support of it may be gathered from all of the testimony.

We find no error in this case of which the defendant can complain. Conceding that technical errors were committed during the hurry of the trial, we find no prejudice to the defendant. Indeed, it seems to us that the learned trial judge was particularly careful and painstaking in the conduct of the trial, and, reading all of the instructions together, we do not feel that the defendant has reason to complain of any action of the court below. Affirmed.

*Affirmed.*


MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY. concur.