MICHAEL J. GRIFFIN, administrator, *vs.* BOSTON AND ALBANY
RAILROAD COMPANY.

Hampden.    September 25, 1888. — January 1, 1889.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Railroad — Loss of Life — Master and Servant — Negligence — Due Care.*

At the trial of an action against a railroad company for causing the death of the
plaintiff's intestate, the plaintiff offered to prove that the intestate was employed
by the defendant as a night watchman at a station through which ran three
tracks from east to west, a part of his duty being to preserve order therein, and
to prevent persons crossing the tracks from being injured; that about eleven
o'clock P. M., while he was on the south side of the station, two trains, a freight
train bound west and the other bound east, entered the station on the middle
and south tracks respectively; that after the east bound train had passed he
started to cross to the north side, supposing that the west bound train had also
passed along; that this train had become separated into two parts by the spread-
ing of the coupling link between two of the cars and only the forward part had
gone by; and that, as he was crossing the middle track, the rear portion came
rapidly along, and, the station being filled with noise and smoke and the lights
being in bad condition, without warning, struck him on the front of the shoulder,
causing injuries from which he died.   *Held*, that the plaintiff was entitled to go
to the jury both upon the question of the defendant's negligence and upon that
of the intestate's due care.

TORT, for causing the death of the plaintiff's intestate.   At
the trial in the Superior Court, before *Barker*, J., the plaintiff
offered to prove the following facts.

On or about June 9, 1886, Bartholomew Griffin, the intes-
tate, was employed by the defendant as a night watchman at its
passenger station, in Springfield, his duties being, among other
things, to preserve order during the night throughout the station,
and to look out for persons crossing the tracks and see that they
were not injured by passing trains.   In this station there are
three tracks, running east and west, and at about eleven o'clock
in the evening of that day two trains entered the station, a
freight train going west on the middle track, and another train
going east on the south track.   The train going east passed
through the station, leaving considerable smoke behind it, which
rendered the station, by reason of the lights being in bad condi-
tion, darker than usual.   Immediately afterwards Griffin, who

was on the south side of the station, supposing that the west bound train had also passed along, started to cross over to the north side. The west bound train had, however, broken in two parts, and only the forward portion had passed through the station. As Griffin was crossing the tracks, the rear portion of the train came along rapidly and quietly, and, without warning, struck him upon the front of the left shoulder and threw him under the train, causing injuries, of which, a short time after, he died. Upon both portions of the freight train being stopped, it was found that it had become separated into two parts by reason of the spreading of a coupling link between two of the cars of the train. At the time the detached portion of the train came into the station, there was no light upon it or signal given, and no one upon it except in the caboose at the rear end of it, at least no one was visible. There was at the time a great noise, occasioned by the passing of trains and the puffing of a switching engine immediately following the east bound train on the south track. No evidence was offered that Griffin was looking either way for passing trains, except such inference as might be drawn from the manner in which he was struck.

The plaintiff contended that the defendant was negligent in not having its cars properly attached; that the breaking in two of the train was through the defendant's negligence in not supplying its road with proper materials for operating it, and that the accident occurred by reason of such negligence on the part of the defendant; that the plaintiff was entitled to recover if his intestate was in the exercise of due care; and that, in view of the noise and the smoke in the station, the flickering of the lights, and the fact that no signal was given of the approach of the detached portion of the freight train, he was in the exercise of due care. The plaintiff did not offer, or claim to have, any evidence of negligence on the part of the defendant in not supplying the road with proper materials, except the above, tending to show the manner in which the rear portion of the train became detached, and the condition in which the apparatus for keeping the cars attached was found immediately after the occurrence of the accident.

The judge, at the close of the plaintiff's offer of proof, ruled, as requested by the defendant, which offered no evidence, that

the action could not be maintained, and ordered a verdict for the defendant; and reported the case for the determination of this court. If the ruling was correct, judgment for the defendant was to be entered upon the verdict; otherwise, the case was to stand for trial.

*W. H. Brooks & J. B. Carroll*, for the plaintiff.

*G. M. Stearns*, for the defendant.

C. ALLEN, J.   The two things to be considered are, whether in view of the plaintiff's offer of proof he was entitled to go to the jury upon the questions of the want of due care on the part of the defendant, and of the exercise of due care on the part of the plaintiff's intestate; and both of these matters must be determined upon the assumption that the plaintiff proved his case according to his offer, and that the defendant offered nothing by way of explanation.

1. Upon the question whether there was enough evidence of a want of due care on the part of the defendant, the difficulty is not so much in the ascertainment of the general rules as in their application. There is no doubt that as a general rule a master is bound to exercise reasonable care in providing suitable machinery, instruments, means, and appliances for his work. It is also well settled, that if he has failed to do so, and an injury has resulted to his servant, the master is responsible, although the negligence of a fellow servant contributed to the accident. *Cayzer* v. *Taylor*, 10 Gray, 274. *Elmer* v. *Locke*, 135 Mass. 575. *Booth* v. *Boston & Albany Railroad*, 73 N. Y. 38. *Cone* v. *Delaware, Lackawanna & Western Railroad*, 81 N. Y. 206. *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700. It is also clear that the plaintiff must introduce evidence to show that the injury is more naturally to be attributed to the negligence of the defendant than to any other cause. If the accident appears upon the evidence to be as consistent with the absence of negligence for which the defendant is responsible as with the existence of such negligence, the plaintiff must fail, and the case should not be left to the jury. *Kendall* v. *Boston*, 118 Mass. 234. *Wakelin* v. *London & South Western Railway*, 12 App. Cas. 41. *Scott* v. *London & St. Katherine Docks Co.* 3 H. & C. 596. *Cotton* v. *Wood*, 8 C. B. (N. S.) 568. *Hammack* v. *White*, 11 C. B. (N. S.) 588.

In the present case, upon the plaintiff's offer of proof, it is obviously possible that the injury may have sprung either wholly or partly from the defendant's negligence, or from some cause independent of any negligence for which the defendant would be responsible to the plaintiff. But a plaintiff in a civil case is not required to prove his case beyond a doubt. All that the plaintiff upon this branch of his case was required to do was to make it appear to be more probable that the injury came in whole or in part from the defendant's negligence than from any other cause. No general rule can be laid down, that the mere occurrence of an accident is or is not sufficient *prima facie* proof of actionable negligence, for each case must depend upon its own circumstances; and what would be sufficient proof of such negligence in an action brought against a railroad company by a passenger, or by a stranger, might not be so in an action brought by one of its servants. The question is, whether this plaintiff upon his offer of proof was entitled to go to the jury upon the question of the defendant's negligence.

The general rule as to the defendant's duty in providing means and instruments for the operation of its railroad has been already stated. Clearly, the providing of a sufficient quantity of suitable links for coupling the cars of a train fell within this duty. This is a duty which belonged to the defendant as master, and could not be delegated. If through a want of reasonable care and diligence unsafe coupling links were furnished, even though this were done by agents of the railroad company, the neglect is to be treated as the neglect of the company itself. Now it is true that the defendant may have used due care, although the particular coupling link which spread or opened, and thereby led to the accident, proved to be unsuitable or unsafe. There may have been a latent defect which was undiscoverable. The link in question may have come with a car from another railroad, so that the defendant's duty was merely one of inspection, and the defendant may have done its duty in this respect. Or, in other particulars, the fault may have been the fault of a fellow servant, for whose negligence the defendant would not be responsible to the plaintiff.

It may have been that the defendant could have exonerated itself fully from liability. But what we have to consider is,

whether under the circumstances the plaintiff went far enough with his offer of proof to put the defendant upon its defence, — far enough to make out a *prima facie* case ; and in considering this question, it is impossible not to take into view the knowledge which the plaintiff and the defendant respectively possessed, or had the means of obtaining.   The history of this broken link is not disclosed, — whether it was new or old, whether originally sufficient or insufficient, worn or not worn, whether it was furnished by the defendant itself as a part of its own equipment, or whether it came from some other railroad.   These facts it is reasonable to assume were not within the plaintiff's knowledge, or means of knowledge.   The railroad train was under the management of the defendant.   The defendant knew or had the means of knowing where and by whom the train was made up, of what cars it was composed, and what degree of care and diligence had been observed in making it safe to be run.

The separation of a train in consequence of the spreading of a link, where nothing further appears, is more naturally to be attributed to an imperfection or defect in the link than to any other cause.   Ordinarily, such separation would not happen if the link was sound and suitable for use.   If the link was not sound and suitable for use, the fact of its being used in that condition properly calls for explanation from the defendant ; and if under such circumstances the defendant fails to put in any evidence, some inference against it may be drawn therefrom.   The fact may be susceptible of an explanation sufficient to exonerate the defendant.   But in the absence of such explanation, we think the jury might properly infer negligence on the part of the defendant.   Primarily in such case one may properly look to the railroad company itself, whose duty it is to use reasonable care to provide safe instruments and means for operating the railroad. In the absence of any explanation by the company, it is more probable that the separation of the train was from a cause for which it would be responsible than that it was from a cause for which it would not be responsible.   See *Scott* v. *London & St. Katherine Docks Co.* 3 H. & C. 596 ; *Bridges* v. *North London Railway*, L. R. 6 Q. B. 377, 391, by Channell, B.   We think, on the whole, that the plaintiff was entitled to go to the jury upon this point.

2. The remaining question is, whether the plaintiff's intestate himself appeared to be in the exercise of sufficient care, and upon this question also the court is of the opinion that upon the offer of proof it would be for the jury. The approaching train had become separated into two parts, from an unusual cause, and no notice had reached the intestate that it had become thus separated. A jury might find it consistent with the exercise of due care on his part to assume, when the first portion of the train had gone by, that the whole train had passed. *Maguire* v. *Fitchburg Railroad*, 146 Mass. 379.

*Case to stand for trial.*