## KAEMMERLING v. ATHLETIC MINING & SMELTING CO.

(Circuit Court of Appeals, Eighth Circuit. September 11, 1924.)

No. 6507.

1. **Master and servant ⬦≈265(5)—Rule of "res ipsa loquitur" applicable to servant's action for injury.**

The rule of "res ipsa loquitur" is applicable in actions between master and servant only under exceptional circumstances, and when applicable does not relieve plaintiff of the burden of proving negligence nor raise any presumption in his favor, but means only that the occurrence, with its attendant circumstances, is such as to warrant an inference that it was the result of causal negligence and is sufficient for the consideration of the jury even in the absence of additional evidence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res ipsa loquitur.]

2. **Master and servant ⬦≈219(10) — Servant does not assume risk from hidden defects in machinery.**

A servant does not assume the risk from hidden and unusual defects which in the exercise of ordinary care he could not discover.

3. **Master and servant ⬦≈122—Master not liable for injuries from hidden defects not discoverable by due care.**

Master is not liable for unforeseen accidents resulting from latent or hidden defects which, in the exercise of a degree of care commensurate with the business and situation, he could not discover.

4. **Pleading ⬦≈34(3)—Inferences to be drawn from general allegations.**

Inferences which a trial court is permitted to draw from the ultimate or general facts alleged in a pleading are more general and of wider scope than the particular inferences drawn by a jury from the many evidential facts adduced on the trial.

5. **Negligence ⬦≈111(1) — General allegations in pleading may be sufficient.**

In an action for negligence the plaintiff need not set out in detail the specific acts constituting the negligence complained of, and in a case to which the rule of res ipsa loquitur is at all applicable the petition is not required to state the facts with that degree of particularity which would be required in ordinary cases.

6. **Master and servant ⬦≈258(11)—Petition in action by servant for injury held sufficient.**

Under Crawford & Moses' Dig. Ark. § 7137, which makes corporation employers liable for injuries to employees caused by negligence of fellow servants, the petition, in an action by an employee against the corporation, which alleged that plaintiff was injured by a dangerous current of electricity in an iron lever which he was required to use in operating a switch, and that the presence of the current in such lever was due to negligence of defendant, *held* sufficient as matter of pleading to state a cause of action and good against demurrer.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by John Kaemmerling against the Athletic Mining & Smelting

Company. Judgment for defendant, and plaintiff brings error. Reversed.

Ben Cravens and Fadjo Cravens, both of Ft. Smith, Ark., for plaintiff in error.

Thomas B. Pryor, Vincent M. Miles, and James B. McDonough, all of Ft. Smith, Ark., for defendant in error.

Before KENYON, Circuit Judge, and AMIDON and SCOTT, District Judges.

SCOTT, District Judge. This action was brought by the plaintiff in error, hereinafter referred to as the plaintiff, to recover damages for personal injury on account of being shocked and burned by electricity when attempting to operate an electric switch. Plaintiff in his petition alleges:

"That the Athletic Mining & Smelting Company is a corporation, organized and existing under and by virtue of the laws of the state of Missouri, with its principal place of business in Webb City, in said state, and that the defendant, Athletic Mining & Smelting Company, is engaged in the operation of a zinc smelter in and near South Ft. Smith, Sebastian county, Ark., and was so engaged at all times mentioned in this complaint; that the plaintiff, John Kaemmerling, is a citizen and resident of the Ft. Smith district of Sebastian county, Ark., and was such at all times mentioned in this complaint; that this is a suit of a civil nature and that the amount in controversy exceeds, exclusive of costs and interest, the sum of $3,000, and that this suit is between residents of different states of the United States of America.

"That the plaintiff, John Kaemmerling, was employed by the Athletic Mining & Smelting Company for some time prior and up to November 16, 1921, when by reason of the negligence of the said Athletic Mining & Smelting Company, its agents, servants, and employees, as hereinafter set out, plaintiff was compelled to discontinue his connection with said company.

"That in connection and as part of the Athletic Mining & Smelting Company's plant located in or near the town of South Ft. Smith, Ark., there is operated by said company an electric switch for the purpose of transferring the electric current supplied to the Athletic Mining & Smelting Company and used for the purpose of switching the electric current entering the property of said company from high power to low power and from low power to high power.

"That among other duties assigned to the plaintiff as part of his employment by the Athletic Mining & Smelting Company was the duty to transfer the electric current entering said company, as above set out, from high power to low power and from low power to high power, when so directed, and that on or about the 16th day of November, 1921, between 8 o'clock and 9 o'clock p. m., on said date, plaintiff herein was instructed by one Charlie Doggett, whose duty it was to instruct the plaintiff when it was necessary to transfer from lower power to high power or from high power to low power, to transfer the electric current entering the Athletic Mining & Smelting Company from low power to high power, and that thereupon the plaintiff proceeded to throw out a low line current by pulling an iron lever suspended between two posts located on the property of the Athletic Mining & Smelting Company, and that the plaintiff then proceeded to pull out a knife switch located on the property of said company, after doing which the plaintiff then proceeded to throw in the high current line by taking hold of an iron lever that hangs down between two other posts located on the property of the Athletic Mining & Smelting Company and used for the purpose of throwing in the high power electric current. That in making said transfer the plaintiff, John Kaemmerling, followed exactly the instructions he had theretofore received from one John Kalewein, an employee of the Athletic Mining & Smelting Company, and observed all the rules and regulations prescribed by said company in transferring said electric current, and at all times took all precautions for his own safety. That when plaintiff took hold of said iron lever which hangs down between the posts for the purpose of transferring the current entering the property of the defendant company from low power to high power he was severely shocked and burned by the electric current coming down said iron lever so that he was thrown violently and forcibly against the ground, which said throwing, together with the electric shock and burns, rendered the plaintiff unconscious, severely bruising and cutting his shoulder, ear, and temple, and by reason of the intensity of the electric shock his hands, legs, and feet were severely burned, and the second finger on his right hand was so severely and painfully burned that the removal of said second finger on the plaintiff's right hand was necessary at the second joint, and the plaintiff was so severely and painfully burned on the third finger on his right hand that it was necessary to scrape off of said finger all the flesh and skin to the bone, which left the said third finger on plaintiff's

right hand permanently stiff and unfit for use, and so severely and painfully burned the thumb of plaintiff's right hand so that the same was turned in against the palm of plaintiff's right hand and was rendered permanently stiff and unfit for use. * * *

"That the plaintiff, John Kaemmerling, had nothing to do with the construction or maintenance of the iron lever or switch through which he was shocked, burned, and injured, as above set out, but that said iron lever, switch, and posts, and all equipment used by the said plaintiff in transferring the electric current, as above alleged, were under the exclusive management, supervision, and control of the defendant company, its agents, servants, and employees, and that the injuries herein complained of resulted directly and proximately from the negligence of said defendants, its agents, servants, and employees, in a manner unknown and unexplained to this plaintiff; and the plaintiff, John Kaemmerling, was employed by the defendant company as a fireman in its smelter located in South Ft. Smith, Ark., and that the duty imposed on him by said company to transfer the electric current entering the Athletic Mining & Smelting Company from high power to low power and from low power to high power was an additional and supplementary duty and not such a duty as is usually or ordinarily imposed upon one employed as a fireman, and the injury herein complained of is not one that usually occurs in the operation of a switch as above described, nor switches similar to it, but on the contrary is a rare and unusual occurrence in the operation of said switch; that said switch is a complicated mechanical device and that the cause of the injury herein complained of was not and could not be foreseen by this plaintiff.

"That as a direct and proximate result of the negligence complained of the plaintiff was injured, as above set out. * * * "

To plaintiff's petition stating his cause of action as above set forth, the defendant interposed a general demurrer, which on submission was sustained. The plaintiff duly excepted to the ruling of the court, assigns the same as error, and now upon writ of error asks a reversal of the ruling of the trial court.

[1] We have set out all that part of plaintiff's petition which relates to his cause of action in hæc verba because we have before us a delicate question of pleading to determine. It will be observed that plaintiff does not set out the particular acts or omissions to which his general charge of negligence refers, his theory evidently being that the accident in question when described with its circumstances was such as would warrant an inference of negligence. That is, that the case is one to which, when on trial, that exceptional rule of evidence connoted by the quaint maxim, "Res ipsa loquitur," will apply. Now this being a case between master and servant, and that rule being applicable to such cases only "under the most exceptional circumstances," we have to determine whether the circumstances pleaded are so exceptional that with such legitimate inferences as may be drawn therefrom, would warrant the application of the rule referred to and carry the case to the jury.

The rule res ipsa loquitur, it must be understood, does not imply that "the mere happening of the accident" either raises a presumption of negligence against the defendant, or shifts the burden of proof from the plaintiff. The application of the rule referred to simply means that the occurrence with its accompanying circumstances is such as to warrant an inference that it was the result of causal negligence. The Supreme Court of the United States, in Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905, used this language: "The rule of res ipsa loquitur does not relieve the plaintiff of the burden of showing negligence, nor does it raise any presumption in his favor. Whether the defendant introduces evidence or not, the plaintiff in this case will not be entitled to a verdict unless he satisfies the jury by the preponderance of the evidence that his injuries were caused by a defect in the elevator, attributable to the defendant's negligence. The law attaches no special weight, as proof, to the fact of an accident, but simply holds it to be sufficient for the consideration of the jury, even in the absence of any additional evidence."

The Supreme Court, in Patton v. Texas and Pacific Railway Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, made these observations:

"First. That while in the case of a passenger the fact of an accident carries with it a presumption of negligence on the part of the carrier, a presumption which in the absence of some explanation or proof to the contrary is sufficient to sustain a verdict against him, for there is prima facie a breach of his contract to carry safely. (Citing cases.) A different rule obtains as to an employee. The fact of accident carries with it no presumption of negligence on the part of the employer, and it is an affirmative fact

for the injured employee to establish that the employer has been guilty of negligence. Texas & Pacific Railway v. Barrett, 166 U. S. 617. Second. That in the latter case it is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to. guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

Judge Sanborn, in delivering the opinion of this court in Northern Pacific Railway Co. v. Dixon, 139 F. 737, 71 C. C. A. 555, very clearly states the reason for restricting the rule of res ipsa loquitur in cases between master and servant. We here quote Judge Sanborn's language:

"But the doctrine, 'Res ipsa loquitur,' is inapplicable to cases between master and servant brought to recover damages for negligence, because there are many possible causes of accidents during service, the risk of some of which, such as the negligence of fellow servants and the other ordinary dangers of the work, the servant assumes, while for the risk of others, such as the lack of ordinary care to construct or keep in repair the machinery or place of work, the master is responsible. The mere happening of an accident which injures a servant fails to indicate whether it resulted from one of the causes the risk of which is the servant's or from one of those the risk of which is the master's; and for this reason it raises no presumption that it was caused by the negligence of the latter. In such cases the burden of proof is always upon him who avers that the negligence of the master caused the accident to establish that fact, and a naked finding, as in this case, that the accident occurred and that the servant was guilty of no negligence which contributed to cause his injury, is insufficient to sustain this burden, for there are many other causes than the negligence of the master and that of the servant, such as the negligence of fellow .servants and latent and undiscoverable defects in place or machinery, which may have produced it."

The reason of the rule as stated by Judge Sanborn is given further illustration in a later decision of the Supreme Court in

Minneapolis & St. Louis R. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995. That was a case brought under the federal Employers' Liability Act, the accident being caused by the opening of a coupler on one of the cars of defendant, resulting in an automatic setting of the emergency brakes, which threw plaintiff from the train and under the wheels. It was urged in that case that the doctrine of res ipsa loquitur did not apply between the master and the servant, and the contention supported by citing as authority Patton v. Texas & Pacific Ry. Co., supra, and Looney v. Metropolitan R. R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564. Mr. Chief Justice White delivering the opinion of the court said:

"We think the contention is without merit because, conceding in the fullest measure the correctness of the ruling announced in the cases relied upon to the effect that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances, we are of opinion such principle is here not controlling in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars"— citing St. Louis, Iron Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 28 S. Ct. 616, 52 L. Ed. 1061, and other cases.

Now it will be recalled that the Safety Appliance Act provides:

"Any employee of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car, or train had been brought to his knowledge." Comp. St. § 8612.

So it will be seen that the inapplicability or rather restriction of the application of the rule res ipsa loquitur to cases of master and servant rests upon the principle that the servant by entering the employment of the master has assumed the risk of such employment, ordinarily including the negligence of fellow servants. But we also see shown in the holding of the Supreme Court in the Gotschall Case, supra, when the assumption of risk is removed, the reason for the rule fails.

In the light of what we have said it now becomes material to consider just what risks the servant does assume, and we quote from the text of 20 A. & E. Encyc. of L. (2d Ed.) 109: "Where a person voluntarily enters into a contract of hiring he assumes all the

2 F.(2d)—37

risks and hazards ordinarily and usually incident to such employment, and will·be presumed to have contracted with reference to such risks and hazards." Again on page 112: "A servant will be presumed to have notice of and to have assumed the risks incident to all dangers and defects which, to a person of his experience and understanding, are or ought to be patent and obvious." Again on page 114: "A servant who, on entering into a contract of employment, knows of the dangers of the prpmises or place of work, or by the use of ordinary care could see and understand them, assumes the risks which arise therefrom." And on page 116: "Obvious dangers in the use of machinery and appliances, whether naturally inherent in the machinery and appliances or caused by imperfections and defects therein, cannot be made a ground ·of recovery for injuries sustained by the servant in the course of the employment." The same rule applies to extrahazardous employments. Id. 119. "The rule that the servant assumes all risks ordinarily incident to the employment in which he engages does not apply to defects and dangers which he has no knowledge of, and could not discover by the use of ordinary care, and of which the master has or ought to have knowledge. The servant is under no obligation to inspect the building in which he is placed to work, or the machinery and appliances with which he is furnished, to discover latent defects and dangers which render the business more than ordinarily hazardous, but has the right to assume that the master has done his duty in furnishing a safe place to work and safe machinery and appliances." Id. 121, 122.

[2, 3] From the foregoing it would appear—and the text is supported by a wilderness of authorities—that the servant does not assume the risk of hidden and unusual defects which in the exercise of ordinary care he could not discover. On the other hand the master is not liable for unforeseen accidents resulting from latent or hidden defects which he in the exercise of a degree of care commensurate with the business and situation could not discover.

Now we have seen that ordinarily the negligence of a fellow servant is one of the risks which an employee assumes. But we must eliminate that factor in the instant case. The accident in question occurred in the state of Arkansas, and at the time of the happening a statute of that state of which we must take judicial notice was in force that provides as follows:

"Hereafter * * * all corporations of every · kind and character * * * who may employ agents, servants or employees, such agents, servants or employees being in the exercise of due care, shall be liable to respond in damages for injuries or death sustained by any such agent, employee or servant, resulting from the careless omission of duty or negligence of such employer, or which may result from the carelessness, omission of duty or· negligence of any other agent, servant or employee of the said employer, in the same manner and to the same extent as if the carelessness, omission of duty or negligence causing the injury or death was that of the employer." Act of March 8, 1907, being section 7137, Crawford & Moses' Digest of the Statutes of Arkansas, 1921.

[4] Now it would seem, considering all of the allegations of plaintiff's petition and the law of Arkansas, that the case is narrowed down to an assumption and one alternative. The electric current was diverted into the iron lever by reason of some hidden defect or cause which the defendant in the exercise of that high degree of care imposed upon those using high powered electric current ought to have discovered, in which case the defendant would be liable; or the electric current was diverted by reason of some hidden defect or cause of such recent origin and of such obscure character that the defendant in the exercise of the degree of care stated would obtain no knowledge, in which case the defendant would not be liable. Which of these conclusions ought the court to have drawn? In answering this question we must hold constantly in mind that the case below was determined on demurrer. The allegations of plaintiff's petition are not only general but leave some things to inference. But inferences are permitted to be drawn legitimately in interpreting a pleading. Indeed, the sufficiency of a pleading is tested by the facts pleaded with their legitimate inferences. A plaintiff in stating a cause of action pleads ultimate or general facts, not particular or evidential facts. Indeed, it is elementary that the pleading of evidence is reprehensible. Such being the case, the inferences which a trial court is permitted to draw from the ultimate or general facts found in a pleading are more general and of wider scope than the particular inferences drawn by a jury from the many evidential facts adduced on the trial. Now it seems to us that these principles and considerations find peculiar applicability in those rare cases wherein the particular facts

and causal circumstances are obscure and where necessarily much is left to inference. The rule of evidence characterized as res ipsa loquitur finds its origin in the necessities of the case and in the reluctance of courts to deny justice and a remedy merely because the particular causal facts although present cannot be isolated and particularly identified. This rule of evidence ought to, and we think it does, have its concomitant rule of pleading. As stated by Judge Hammond in Sledge v. Gayoso Hotel Co. (C. C.) 43 F. 463: "It is always injudicious for a court to undertake, as a matter of mere pleading, to determine a question of negligence, either original or contributory, in any case where the declaration or plea contains a substantial cause of action or defense. Negligence is a mixed question of law and fact, sometimes largely depending upon inferences to be drawn wholly by the jury, and for the court to assume to decide them upon the necessarily brief statements of the conclusions of fact found in a pleading would be to usurp the function of the jury, or at least to trench upon it with insufficient knowledge of the facts."

[5] "The rule is well-nigh universal that, in an action for negligence, the plaintiff need not set out in detail the specific acts constituting the negligence complained of, as this would be pleading the evidence." 14 Encyc. of Pleading and Evidence, 333. "A general averment of negligence in the particular act complained of, resulting in damages, is good, at least as against a general demurrer." Id. 334. "But the act done or omitted which constitutes the negligence complained of should be stated with a reasonable degree of particularity." Id. 335.

[6] Now a reasonable degree of particularity must depend upon the circumstances and nature of the case. In a case to which the rule res ipsa loquitur is at all applicable, reason does not require the plaintiff to state the facts with that degree of particularity which would be required in ordinary cases. Now in the instant case a careful analysis of all the facts set up in the plaintiff's petition with their legitimate inferences drawn indicates that the plaintiff declares that his injury was caused by the presence of a highly dangerous current of electricity in the iron lever which he was compelled to use in the performance of his duty. He charges that the presence of the current in the lever was due to the negligence of the defendant. It seems to us that these averments satisfy the elementary rules of pleading in such cases, and that any inferential doubt that might linger touching the liability of the defendant should await the introduction of evidence on the trial. Such evidence in all probability will afford new grounds of inference more definite and particular in their character. The character and condition of the appliances, the local situation, weather conditions, matters of insulation, spaces and distances between conductive materials, grounding agencies, and protection against grounding through the body of the operator, the presence of moisture and protection against moisture, all these may become material to be considered in drawing some inferences and eliminating others.

For the reasons stated in this opinion the decision of the trial court is reversed.

KENYON, Circuit Judge, concurs in the result.

AMIDON, District Judge. I concur in the reversal of this case. My reasons are somewhat different from those stated by Judge SCOTT, and I state them in the hope of aiding the lower court in the trial of the case upon the merits.

The trial court sustained the demurrer upon the ground that the complaint failed to specify any particular acts of negligence on the part of the defendant which caused the current of electricity to escape from its usual conduits and pass into the iron lever. That is the substance also of the argument of counsel for defendant.

Does the law require plaintiff to go back of the primary cause of his injury, namely, the presence of the dangerous current of electricity in the lever, and point out the specific defect which caused the current of electricity to escape from its ordinary conduits and pass into the lever. Elementary rules of pleading show that no such specification on the part of plaintiff was required. The rule on that subject is stated as follows in Cyc. vol. 29, p. 570:

"Negligence being the ultimate fact to be pleaded and not a mere conclusion of law, a declaration or complaint charging defendant with an act injurious to plaintiff, with a general allegation of negligence in the performance of the act, is sufficient, at least as against a general demurrer for want of sufficient facts, without stating the details or particulars of the act causing the injury."

The same rule is accurately stated in the case of Chaperon v. Portland General Electric Co., 41 Or. 39, 67 P. 928, as follows:

"We have recently held, after a careful review of the authorities, that it is sufficient,

in a declaration upon negligence, to specify the particular act, the commission or omission of which caused the injury, conjoining with it a general averment that it was negligently and carelessly done or omitted, and that it is unnecessary to go further and particularize or point out the specific facts going to establish the negligence relied upon."

See, to the same effect, Denver Consol. Elec. Co. v. Lawrence, 31 Colo. 301, 73 P. 39; Lucid v. E. I. Du Pont Powder Co., 199 F. 377, 380, 118 C. C. A. 61, L. R. A. 1917E, 182; Bergen v. Tulare Power Co., 173 Cal. 709, 161 P. 269.

This court, in Gulf, Colo. & Santa Fé R. R. Co. v. Washington, 49 F. 347, 1 C. C. A. 286, stated the rule as follows:

"Under that Code a complaint is good on demurrer if it contains the substantial elements of a cause of action, however indefinitely or inartificially they may be stated. Indefiniteness or uncertainty of statements in a complaint which, when construed in the most liberal manner, states the substance of a cause of action, is not a ground of demurrer, but is a defect to be corrected by motion for a more specific statement. * * * It is very well settled that a general allegation of negligence, without stating the particular acts which constituted the negligence, is good against a general demurrer."

Precisely the same argument as counsel for defendant makes in the present case was made in the case of Newark Electric Light & Power Co. v. Ruddy, 62 N. J. Law, 505, 41 A. 712, 57 L. R. A. 624; 63 N. J. Law, 357, 46 A. 1100, 57 L. R. A. 624. That case involved an accident caused by a broken wire hanging down near a sidewalk. Counsel for the company presented his complaint as follows:

"No attempt was made to show that there had been no storm or other violence to account for the falling of the wire. From anything that appeared, a tree, a wall, a pole, a trolley wire or some other object may have fallen upon it and broken it. The local circumstances were as much, at least, within the knowledge of the plaintiff as of the defendant. The accident happened at the door of the plaintiff, and he must have known and have been able to show whether or not there was any external cause for the breaking of the wire."

The court upon a careful review of the authorities held that the plaintiff was not charged with any such burden. It held that when a dangerous current of electricity is found where it will not usually be present if proper care is exercised, that creates a presumption of negligence upon the part of the company controlling the electrical enterprise.

Upon these elementary doctrines of pleading the complaint in the present case was plainly adequate as against a demurrer. I think it is also adequate as against a motion to make the pleading more definite and certain. The remote cause of the current's escaping to the lever lay wholly outside of the plaintiff's knowledge. If he were to attempt to specify those remote grounds of negligence, it would have been mere guesswork and conjecture on his part. It may be said that he had a right to inspect the machinery which controlled the current of electricity and thus be enabled to speak more definitely. The answer to that is that plaintiff was rendered unconscious by the accident, and was confined to his house for months after the accident occurred. The defect which caused the injury was one which would be immediately discovered by the company and rectified, so by the time the plaintiff had an opportunity to inspect, the inspection would not have disclosed to him the cause of his injury.

The plaintiff here clearly sets out in his complaint that his injury was caused by the presence of a highly dangerous current of electricity in the iron lever which he was compelled to use in the performance of his service. He charges that the presence of the current in the lever was due to the negligence of defendant. Those averments satisfy the elementary rules of pleading. It was error therefore to sustain the demurrer.

If we consider the case from the point of view of a trial on the merits, plaintiff, by proving the averments of his complaint, will make out a case requiring the submission of the question of defendant's negligence to the jury. This results from the degree of care which defendant was obliged to exercise, and from the statutory law of the state in which the accident occurred.

1. The standard of care established by the weight of authority for users of the hidden and dangerous power of electricity is this: "The highest degree of care which skill and foresight can attain consistent with the practical conduct of its business under the known methods and the present state of the particular art." Denver Elec. Co. v. Simpson, 21 Colo. 371, 41 P. 499, 31 L. R. A. 566. This is the standard of care not only for wires in streets, but for service to patrons in offices and houses. Denver Consol. Elec. Co. v. Walters, 39 Colo. 301, 318, 89 P. 815, 818; Alexander v. Nanticoke Light Co., 209

Pa. 571, 58 A. 1068, 67 L. R. A. 475, 477. It is also the standard of care for the workmen of an independent contractor or for the workmen of the defendant. Gagnon v. St. Marie's Light Co., 26 Idaho, 87, 141 P. 89; Smith v. Middlesboro Elec. Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164; Bowling Green Co. v. Dean, 142 Ky. 678, 134 S. W. 1115; Geisman v. Missouri Edison Co., 173 Mo. 678, 73 S. W. 654; Shaw v. North Carolina Public Service Co., 168 N. C. 611, 84 S. E. 1010; Myers v. Portland Light Co., 68 Or. 599, 138 P. 213; Donnelly v. Lehigh Elec. Co., 258 Pa. 580, 102 A. 219; Yeager v. Edison Elec. Co., 242 Pa. 101, 88 A. 872; Fitzgerald v. Edison Elec. Co., 200 Pa. 540, 50 A. 161, 86 Am. St. Rep. 732.

The law is carefully reviewed in the case of Sunday Creek Co. v. Gray, 238 F. 325 (4th Circuit). That was a case between master and servant. The servant was killed and his administrator was permitted to recover. The rule of care required by a master employing the dangerous agency of electricity is stated as follows:

"Where the master employs electricity in his operation he must exercise a supreme degree of care for the servant's safety."

The degree of care thus established for users of the dangerous force of electricity is substantially the same as the care required of a carrier with respect to passengers, namely, the highest degree of care compatible with the practical carrying on of its business.

2. The fellow-servant rule has been abolished in the state of Arkansas where the accident occurred. See section 7137, Crawford & Moses' Digest of the Statutes of Arkansas, 1921; Aluminum Co. v. Ramsey, 89 Ark. 522, 117 S. W. 568; Ozan Lumber Co. v. Biddie, 87 Ark. 587, 113 S. W. 796; Soard v. Western Anthracite Co., 92 Ark. 502, 123 S. W. 759.

The foregoing considerations seem to me to be controlling of the present case. They were wholly overlooked by the learned trial judge.

Judge Sanborn states the general doctrine in the leading authority, Northern Pacific Ry. Co. v. Dixon, 139 F. 737, 740, 71 C. C. A. 555, 558, as follows:

"But the doctrine, 'res ipsa loquitur,' is inapplicable to cases between master and servant brought to recover damages for negligence, because there are many possible causes of accidents during service, the risk of some of which, such as the negligence of fellow servants and the other ordinary dangers of the work, the servant assumes, while for the risk of others, such as the lack of ordinary care to construct or keep in repair the machinery or place of work, the master is responsible. The mere happening of an accident which injures a servant fails to indicate whether it resulted from one of the causes the risk of which is the servant's, or from one of those the risk of which is the master's; and for this reason it raises no presumption that it was caused by the negligence of the latter."

The inference of negligence from an event is not different in the case of master and servant from what it is in the case of a master and third parties. The event proclaims negligence in the one case the same as in the other. Why then is the rule of law different? Because the event does not point out the party whose negligence caused the injury. In the case of an industrial enterprise, as Judge Sanborn points out, the injury may have been caused by the negligence of a fellow servant, or by the negligence of the master. It is just as likely to have been caused by one as by the other. It is because the event does not point out the culpable party that the rule of res ipsa loquitur cannot generally be applied between master and servant. When, however, the fellow-servant rule is abolished, and the master is responsible not only for his own negligence but for the negligence of the co-employés of the plaintiff, the situation is entirely changed. The reason for the rule declared by Judge Sanborn in the above quotation is profoundly modified. The event which gives rise to an inference of negligence then points to the master as the responsible party whether the negligence is his personal negligence or that of a fellow servant. The complaint in the present case shows plainly that plaintiff was free from contributory negligence. It also shows that the cause of the accident was not one of the ordinary risks of the employment. The injury, therefore, can be explained only upon one of the following grounds: (1) The negligence of the master or a coemployé of the plaintiff. (2) A latent defect for which the master would not be responsible. (3) A defect which arose so recently that defendant could not have discovered it by the exercise of proper care. (4) An act of God.

The claim that the injury was caused by an act of God is clearly defensive. Orient Ins. Co. v. Northern Pac. Ry. Co., 31 Mont. 502, 78 P. 1036; Chicago, etc., R. R. Co. v. Shaw, 63 Neb. 380, 88 N. W. 508, 56 L. R. A. 341. Changes in humidity, ordinary

storms, even thunderbolts, are not acts of God, but contingencies against which the user of electricity must provide. S. W. Telephone & Telegraph Co. v. Abeles, 94 Ark. 254, 126 S. W. 724, 140 Am. St. Rep. 115, 21 Ann. Cas. 1006; Warren v. Missouri Telephone Co., 196 Mo. App. 549, 196 S. W. 1030; 20 Corpus Juris, 344, note 99; Id. 363, note 63.

Let us now consider the claim that the injury was caused by a latent or recent defect. If the electric current was diverted by reason of some latent defect, or because of a defect of such recent origin that defendant in the exercise of proper care could not have discovered it, the defendant would not be liable. The question in this case, however, is this: Upon whom rests the burden of going forward with the evidence to show these exonerating facts? The great weight of authority says that the master must produce that proof. If he makes out a prima facie case on those questions, it would then be the duty of the plaintiff to answer by countervailing evidence. What has just been said does not mean that plaintiff does not have the burden of proving the negligence of defendant. He makes out a prima facie case on that subject by the accident itself, and its attendant circumstances. It then becomes the duty of defendant, if there are exonerating facts, to produce evidence on those subjects. But when the whole evidence is in, the plaintiff is bound to satisfy the jury by a preponderance of the evidence that his injury was caused by the negligence of defendant. It is important to get this feature of the case clear. The term "burden of proof" has a double meaning. (1) It means the duty of a party to establish the issue which he tenders in his pleading. That burden rests upon him at the beginning of the case, and also at the end of the case. (2) The term "burden of proof" means the duty to go forward with the evidence from time to time in the progress of the trial. That burden constantly shifts, while the first burden never shifts. This subject was first explained by James Bradley Thayer in his Preliminary Treatise on Evidence, at page 355. It is also discussed by Wigmore, § 2489 et seq. It is best dealt with by Chamberlayne, beginning at section 936. This author makes the wise suggestion that the term "burden of proof," when it has the second meaning, should be called "burden of evidence."

That the burden of going forward with the evidence to prove that the injury was caused by latent or recent defects rests upon the defendant is clearly established by the courts. Ross v. Double Shoals Cotton Mills, 140 N. C. 115, 52 S. E. 121, 124, 1 L. R. A. (N. S.) 298; Trenton Pass. Ry. Co. v. Cooper, 60 N. J. Law, 219, 37 A. 730, 38 L. R. A. 637, 64 Am. St. Rep. 592; Boyd v. Portland Gen. Elec. Co., 41 Or. 336, 68 P. 810; Shaw v. N. C. Public Service Co., 168 N. C. 611, 84 S. E. 1010; Shearman & Redfield on Negligence, §§ 58, 58a, 58b, and 59.

The whole subject is presented with clearness and accuracy by the Supreme Judicial Court of Massachusetts, in Griffin v. Boston & Albany R. R. Co., 148 Mass. 143, 19 N. E. 166, 1 L. R. A. 698, 12 Am. St. Rep. 526. The suit was brought to recover damages for the death of an employee, caused by the spreading of a link used in coupling freight cars. At the conclusion of plaintiff's evidence the trial court directed a verdict in favor of the defendant. In reversing this decision, the Supreme Court, speaking by Judge Allen, used the following language:

"If through a want of reasonable care and diligence unsafe coupling links were furnished, even though this were done by agents of the railroad company, the neglect is to be treated as the neglect of the company itself. Now it is true that the defendant may have used due care, although the particular coupling link which spread or opened, and thereby led to the accident, proved to be unsuitable or unsafe. There may have been a latent defect which was undiscoverable. The link in question may have come with a car from another railroad, so that the defendant's duty was merely one of inspection, and the defendant may have done its duty in this respect. Or, in other particulars, the fault may have been the fault of a fellow servant, for whose negligence the defendant would not be responsible to the plaintiff. It may have been that the defendant could have exonerated itself fully from liability. But what we have to consider is, whether under the circumstances the plaintiff went far enough with his offer of proof to put the defendant upon its defense—far enough to make out a prima facie case; and in considering this question, it is impossible not to take into view the knowledge which the plaintiff and the defendant respectively possessed, or had the means of obtaining. The history of this broken link is not disclosed— whether it was new or old, whether originally sufficient or insufficient, worn or not worn, whether it was furnished by the defendant itself as a part of its own equip-

ment, or whether it came from some other railroad. These facts it is reasonable to assume, were not within the plaintiff's knowledge, or means of knowledge. The railroad train was under the management of the defendant. The defendant knew or had the means of knowing where and by whom the train was made up, of what cars it was composed, and what degree of care and diligence had been observed in making it safe to be run. The separation of a train in consequence of the spreading of a link, where nothing further appears, is more naturally to be attributed to an imperfection or defect in the link than to any other cause. Ordinarily, such separation would not happen if the link was sound and suitable for use. If the link was not sound and suitable for use, the fact of its being used in that condition properly calls for explanation from the defendant; and if under such circumstances the defendant fails to put in any evidence, some inference against it may be drawn therefrom. The fact may be susceptible of an explanation sufficient to exonerate the defendant. But in the absence of such explanation, we think the jury might properly infer negligence on the part of the defendant. Primarily in such case one may properly look to the railroad company itself, whose duty it is to use reasonable care to provide safe instruments and means for operating the railroad. In the absence of any explanation by the company, it is more probable that the separation of the train was from a cause for which it would be responsible than that it was from a cause for which it would not be responsible."

The same subject is ably considered in Chenall v. Palmer Brick Co., 117 Ga. 106, 43 S. E. 443. The opinion is by Judge Lamar, afterwards Mr. Justice Lamar of the United States Supreme Court. The suit was brought to recover damages for injuries suffered by an employee from the falling of a brick arch. At the conclusion of the evidence the trial court directed a verdict in favor of the defendant. In reversing the decision Judge Lamar discussed the subject as follows:

"There is a disposition to argue that every injury is the result of somebody's negligence, but in many cases they are mere accidents or casualties for which, humanly speaking, no one is to blame; in others, the person injured is at fault; in some, his negligence contributes to the result; in others, a fellow servant was to blame. In all such instances the maxim, 'Res ipsa loquitur,' affords little or no assistance to the jury, for,

even supposing that the injury itself proclaims negligence, it says nothing as to who was negligent, and fixes no basis for determining whether the plaintiff, the defendant, a fellow servant, or some stranger may not have been at fault. There are other cases, however, where, when it is shown that the defendant owned or controlled the thing which, when properly constructed, maintained, or operated, did not, in the ordinary course of events, so act as to injure those nearby, proof that damage was caused by such thing affords reasonable evidence that the injury was occasioned by want of ordinary care. Prima facie, that want of due care should be referred to him under whose management and control the instrument of injury was found. The jury would not be warranted in reasoning, in a strictly logical form: 'Buildings do not collapse without negligence. This building collapsed. Therefore there was negligence,' for buildings do fall without any one being to blame, and as a result of flood and storm. But ordinarily extraordinary and external causes may be treated as the exception, to be established by the defendant. All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of, the thing doing the damage; that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by vis major, or by other causes for which he was not responsible."

In all well-considered cases the duty of explaining an accident which, with its attendant circumstances, makes out a prima facie case of negligence, is placed upon the defendant. That is the meaning of the phrase, "in the absence of explanation," in the statement of the doctrine in San Juan Light Co. v. Requena, 224 U. S. 89, 98, 38 S. Ct. 339, 56 L. Ed. 680. The same thought is suggested in Sweeney v. Erving, 228 U. S. 233, 240, 33 S. Ct. 416, 57 L. Ed. 815, Ann. Cas. 1914D, 905, when the court says that the prima facie case made out by the accident and its attendant circumstances "call for explanation or rebuttal." In Houston v. Brush, 66 Vt. 331, 29 A. 380, the Supreme Court of Vermont uses the phrase, "In the absence of evidence showing that it happened without the fault of the defendant."

The same statement of the rule is made in Shearman & Redfield (6th Ed.) § 58b.

There may be cases in which a plaintiff might properly be called upon to show that a defect in a simple instrument with which he was as well acquainted as the employer, had existed for a sufficient time for the employer to have discovered and remedied it by the exercise of proper care. But in cases like the present, in which the accident and its attendant circumstances furnish a reasonable ground for the inference of defendant's negligence, it becomes the duty of the defendant, if there are exculpatory facts such as latent or recent defects, to produce the evidence on those subjects.

When the fellow-servant rule is abolished the doctrine of res ipsa loquitur may properly be applied as between master and servant. A case directly in point is Iarussi v. Missouri Pac. Ry. Co. (C. C.) 155 F. 654, 657. That case arose in Kansas, where the fellow-servant rule had been abolished. The plaintiff was injured by the derailment of a work train, and it was urged that proof of the accident furnished no legal inference of negligence. Judge Sanborn, of the Western District of Wisconsin, after pointing out that the Kansas statute was applicable, proceeds as follows:

"It follows from what has been said that the rule of res ipsa loquitur applies to this case. This would not be so in the absence of the act of 1874, because it could not be told whether the deceased was injured by the negligence of a coemployee or by the fault of the company through some independent officer in the relation of a vice principal. But, inasmuch as the plaintiff was a servant, and the company is made liable by the act of 1874 for the negligence of a fellow servant and by the common law for the negligence of a vice principal, it follows that any negligence on the part of the company makes it responsible, and that the mere fact of the happening of the accident raises a presumption of negligence which places the burden upon the defendant to rebut."

This case was affirmed on appeal in Missouri Pacific Ry. Co. v. Iarussi, 161 F. 66, 88 C. C. A. 230.

This court has held that the rule that res ipsa loquitur does not apply as between master and servant is not of universal application. In the case of American Car & Foundry Co. v. Barry, 195 F. 919, 921, 115 C. C. A. 607, Judge Smith, speaking for this court, points out the fact that the rule is not absolute and cites with approval the following cases: Petrarca v. Quidnick, 27 R.

I. 265, 61 A. 648; Ross v. Double Shoals Cotton Mills, 140 N. C. 115, 52 S. E. 121, 1 L. R. A. (N. S.) 298. Both of these cases involved an accident to an employee by reason of a belt slipping from a loose pulley to a tight pulley, and thereby setting machinery in motion and causing injury to the employee. The Supreme Courts of Rhode Island and North Carolina both held that the fact that a belt slipped from a loose pulley to a tight pulley presented a case for the application of the doctrine of res ipsa loquitur. If the slipping of a belt from a loose to a tight pulley presents a case for the application of the rule, surely an accident like the present would present a far stronger case. See, also, Blanton v. Dold, 109 Mo. 64, 18 S. W. 1149.

Another case in this circuit is Nebraska Bridge Supply & Lumber Co. v. Jeffery, 169 F. 609, 95 C. C. A. 137. There the trial court held that the fact of the accident created a conclusive presumption of negligence, and refused to submit to the jury the question of whether the defendant had presented evidence sufficient to rebut the inference of negligence. This court very properly held that the inference of negligence under the res ipsa loquitur doctrine is only a presumption of fact, and is open to rebuttal, and in any case the inference of negligence is not one of law, but is wholly a question of fact, and ought to be submitted to the jury. The court, however, clearly recognized the doctrine as applicable to the accident in that case. The rule which we applied has since been more fully stated by the Supreme Court in Sweeney v. Erving, 228 U. S. 233, 240, 33 S. Ct. 416, 418, 57 L. Ed. 815, Ann. Cas. 1914D, 905, as follows:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

The doctrine has also been applied in cases of injury to a servant, in the Ninth,

Sixth, and Second Circuits in the following cases: Lucid v. E. I. Du Pont Powder Co., 199 F. 377, 118 C. C. A. 61, L. R. A. 1917E, 182; Byers v. Carnegie Steel Co., 159 F. 347, 86 C. C. A. 347, 16 L. R. A. (N. S.) 214; Central R. R. Co. v. Peluso (C. C. A.) 286 F. 661; Hunter v. Illinois Central R. R. Co., 110 C. C. A. 459, 188 F. 645, 651.

In none of the foregoing cases in this circuit and in the other circuits had the fellow-servant rule been abolished. Surely if the rule could be applied where the fellow-servant rule was in force, no sound reason can be given why the inference of negligence should not be indulged in a case where the fellow-servant rule has been abrogated.

The latest federal decision on the questions here involved is Baltimore & Ohio Ry. Co. v. Kast (C. C. A.) 299 F. 419. The Circuit Court of Appeals of the Sixth Circuit there applied the doctrine of res ipsa loquitur to facts far less cogent than those in the present case. The action arose under the federal Liability Act (Comp. St. §§ 8657–8665), which abolishes the fellow-servant rule, and the court makes this one of the important grounds for holding the accident and its attendant circumstances to make out a prima facie case. The court also points out the fact that the Supreme Court denied an application for a writ of certiorari to review the Peluso Case.

The Supreme Court states the conditions for the application of the doctrine of res ipsa loquitur as follows in San Juan Light Co. v. Requena, 224 U. S. 89, 98, 32 S. Ct. 399, 401, 56 L. Ed. 680:

"When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as in the ordinary course of things does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

The present case fits exactly the conditions thus prescribed.

1. There is no pretense that the plaintiff was guilty of any negligence.

2. The defendant had the exclusive control of the electrical appliances which caused the current to escape to the lever.

3. The injury was such as in the ordinary course of things does not occur if the one having such control uses proper care.

The quotations in the opinion from 20 A. & E. Ency. of Law are not in harmony with the decisions of the Supreme Court or of this court. They all contain the vicious doctrine that the servant assumes the risk of defective machinery if he knew of the defects, or "could have discovered them by the exercise of ordinary care." The servant is not bound to exercise ordinary care, or any affirmative care to discover defects in machinery furnished him by the master. The true rule is that the servant assumes the risk of defective machinery when he knows of the defect, or it is so obvious and patent that an ordinary workman would discover it as an incident of the performance of his service. United States Smelting Co. v. Parry, 166 F. 407, 409, 92 C. C. A. 159; Republic Elevator Co. v. Lund, 196 F. 745, 749, 116 C. C. A. 373, 45 L. R. A. (N. S.) 707; H. D. Williams Cooperage Co. v. Sams, 198 F. 852, 117 C. C. A. 494; Texas & Pac. Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 S. Ct. 777, 42 L. Ed. 1188; Choctaw & Okla. R. R. Co. v. McDade, 191 U. S. 64, 68, 24 S. Ct. 24, 48 L. Ed. 96.

The proper approach to this case is well stated by the Court of Errors and Appeals of New Jersey, in Bahr v. Lombard, 53 N. J. Law, 233, 238, 21 A. 190, 191:

"To-day a single plant will comprise a multitude of diverse appliances, the operators of one being, for the most part, totally ignorant of all the others; while not one citizen in thousands knows anything in regard to the character and construction of any of the new mechanical processes with which he is met at every turn, still less of the dangers incident to their operation. Under these changed conditions, to compel plaintiffs in every case to ascribe some specific act as negligence would be to make a recovery for injuries dependent upon the possession of a special technical knowledge, and to grant immunity to the users of dangerous agencies in proportion to the success with which the special element of danger was concealed from the public."