## CHICAGO MILL & LUMBER CO. v. JETT.

Circuit Court of Appeals, Eighth Circuit.
May 6, 1929.

No. 8323.

W. R. Satterfield, of Memphis, Tenn., and John M. Walker, John I. Moore, and John I. Moore, Jr., all of Helena, Ark., for appellant.

W. G. Dinning, of Helena, Ark., and Tom W. Campbell, of Little Rock, Ark., for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. An action by Alice E. Jett, administratrix of the estate of D. S. Jett, deceased, a citizen of Arkansas, against Chicago Mill & Lumber Company, an Illinois corporation, to recover damages for the alleged wrongful death of D. S. Jett in defendant's mill at West Helena, Ark. D. S. Jett was an employee of the appellant, defendant below, acting as stationary engineer in appellant's mill. Two engines were installed in the mill, one a large Corliss engine, which furnished power and light for the mill, and a small, light engine used principally to furnish light for the plant at night when the large engine was not running, and for other purposes. The large engine appears generally to have been shut off along toward midnight and the light engine used, and the large engine again turned on toward morning. Jett was the night man and came on duty about 6 o'clock in the evening, and one Jake Wyse was the day man who alternated with Jett in running these engines. On Tuesday, April 20, 1926, Jett came on duty in the evening as usual and found the large engine running. Jett continued with his duties in the operation of this engine until along toward midnight, when it was turned off and the light engine started. The light engine was turned off about 4:30 in the morning, and Jett then undertook to start the large engine. He proceeded with some of the duties incident to the starting of the engine, the engine started and "run away," and the flywheel burst, killing Jett.

Plaintiff in her complaint charges three grounds of negligence against the defendant. First, permitting improper lubrication and a corroded condition of the spindle shaft. Second, permitting the valves which regulated the governor balls to become corroded and improperly lubricated. And, third, that it permitted the belt which connected the governor with the crank shaft to become loose, greasy, and sticky, or the shaft itself over which it passed to become greasy and slick, by reason of which no power was transmitted from the shaft to the governor, and it failed to function for that reason. The question of negligence was adequately put in issue by the answer, and alleges that Jett's death was caused wholly by his own negligence, and alleges that Jett "was familiar with the use of the machinery which he operated at the time of his death, and alleged that he assumed the risk incident to the use thereof."

The case was tried to a jury and a verdict returned in favor of the plaintiff in the sum of $3,000. Judgment was entered on the verdict, and the defendant appealed. On appeal the defendant assigned 16 separate errors. The first 3 assignments are too general to be noticed, except as they may go to the insufficiency of evidence to support the verdict. The fourth assignment challenges the action of the trial court in submitting the question of comparative negligence to the jury on the ground that there was no testimony to show that there was negligence on the part of the defendant in any of the respects pleaded by the plaintiff. Assignments 5 to 15, inclusive, all relate to exceptions taken to the trial court's refusal to give instructions asked by the defendant. For the purpose of this opinion they may be taken in two groups. Assignments 5 to 12 inclusive, based on instructions 1 to 8 asked by defendant, are submitted upon the theory that there was no substantial evidence of negligence upon the part of the defendant, or circumstances in support of the application of the doctrine of res ipsa loquitur. And assignments 9, 11, and 12 relate to instructions submitted upon the theory of the assumption of risk. We treat the assignments in the form stated for the reason that appellant's counsel has so

grouped and discussed them in their argument.

We think that assignment 4, as well as assignments 5 to 8, inclusive, are without merit. As heretofore stated, it is the theory of the plaintiff that the belt which drove the governor had become out of order by reason of getting grease on it; that it failed to start the governor; that, the governor not functioning, the engine ran away and caused the accident. There is substantial evidence in the case to the effect that on the Friday morning previous the belt had grease on it and had failed to start the governor; that Wyse started the belt and governor by hand; and that it worked all right after being so started. There is evidence that Wyse reported the incident to the assistant master mechanic, one Shiffler, but that nothing was done about the matter. There was no evidence as to the exact time when the belt became greasy prior to Friday morning, or that the belt was in such condition that the grease was apparent or could be easily discovered. There is no evidence that Jett discovered that the belt was greasy, or that it had ever failed to work with him before the time of the accident. We conclude, therefore, that there was substantial evidence of the negligence of the defendant, sufficient to take the case to the jury on that ground. There was probably in the circumstances also evidence of contributory negligence on the part of Jett in not discovering and remedying the condition of the belt. There is evidence tending to show that the governor did not function when Jett attempted to start the engine on the morning of the accident. There is evidence tending to show that the governor would function properly when the belt was functioning, and that the belt had previously failed to start the governor, but when the belt was started by hand the governor functioned properly. Therefore the evidence indicates that the fault was with the belt and not with the governor. Contributory negligence, however, in the state of Arkansas, is not a defense, but merely reduces damages, the rule of comparative negligence prevailing in that jurisdiction. Now, the fact that the accident caused the death of Jett, taken in consideration with his age and earning capacity and that the verdict was only for $3,000, indicates that the jury took into consideration the question of comparative negligence and made due allowance for the contributory negligence of which Jett may have been guilty. We therefore conclude that the trial court committed no error in submitting the question of comparative negligence, and, considering the charge as given, that there was no error in refusing defendant's instructions specified in assignments 5 to 12, inclusive, based on requested instructions 1 to 8, inclusive.

We now come to consider the question of assumption of risk. Upon this point it will be first noticed that the defendant does not plead the assumption of any particular risk arising from conditions of which Jett had notice, but merely pleads that Jett "was familiar with the use of the machinery which he operated at the time of his death, and that he assumed the risk incident to the use thereof." Now, it must be kept in mind that Wyse was the day man and Jett was the night man; that the large Corliss engine would be usually running when Jett came on duty and turned off again along toward midnight; that the Corliss engine was running when Jett came on duty on the night of the accident; and that the faulty condition of the belt in question would be likely to produce its effect only on the starting of the engine. We think we cannot say as a matter of law that Jett had notice of the faulty condition of the belt before attempting to start the engine early Tuesday morning, April 21st. Whatever extent of artificial lighting there might have been, such defects are not so easily noticed as in daylight. If Jett had not discovered the faulty condition of the belt nor had notice of its condition, we think he should not be held to have assumed the risk of that faulty condition. The assumption of risk against hidden defects or dangers requires notice a reasonable time before the accident. Kaemmerling v. Athletic Mining & Smelting Co., 2 F.(2d) 574 (C. C. A. 8th Circuit).

We therefore conclude that there was no error in denying defendant's requested instructions referred to in assignments 13, 14, and 15, based on requested instructions 9, 11, and 12. No assignment of error is made as to requested instruction 10.

Defendant also assigns error in permitting the witnesses Erwin, Lederman, and Sherman to testify, for the alleged reason that there was no proof to establish what was the cause of death of the deceased. We think this assignment not well founded for reasons heretofore stated.

For the reasons stated in this opinion, the judgment of the trial court should be and is affirmed.

COTTERAL, Circuit Judge, dissents.